MATTER OF S—

In EXCLUSION Proceedings

A-10067819

*Board decision of October 9, 1961*
*Decided by the Attorney General January 22, 1962*
*Board decision of January 24, 1962*

**Excludability—Deportability—Effect of adjustment of status, section 245, 1952 Act, on ground which existed prior thereto.**

(1) Adjustment of status acquired under section 245 of the Act does not immunize an alien from the exclusion and deportation provisions of the Act. These provisions apply equally to aliens lawfully admitted for permanent residence and to those who have had their status adjusted under section 245 to that of permanent residents.

(2) The five-year limitation contained in section 246 applies to the Attorney General's authority to rescind adjustment of status and does not bar exclusion or deportation thereafter on grounds which existed prior to the adjustment and which would also have supported rescission, if timely known.

(3) In the instant case, the lapse of more than five years since the applicant's adjustment of status under section 245 does not bar exclusion proceedings based on fraudulent procurement of an entry document prior to the adjustment.

NOTE: *Matter of V—*, 7—363, distinguished.

EXCLUDABLE: Act of 1952—Section 212(a)(19) [8 U.S.C. 1182(a)(19)]—Obtained visa by fraud or misrepresentation (1949).

**BEFORE THE BOARD**
(October 9, 1961)

DISCUSSION: The Board upheld the ruling of the special inquiry officer authorizing the applicant's admission to the United States as a returning resident. The Commissioner believes the applicant is inadmissible and requests that the decision of the Board be certified to the Attorney General for review. The Board has entered two orders: on June 2, 1961, the appeal of the District Director was dismissed, and on August 17, 1961, a Service motion for reconsideration was denied. Request for review is under 8 CFR 3.1(h)(1)(iii).

In April 1955 the applicant secured an adjustment of status under section 245 of the Immigration and Nationality Act (8 U.S.C. 1255)

which then permitted a lawfully admitted nonimmigrant to obtain the status of an alien lawfully admitted for permanent residence. The applicant was ineligible for the adjustment but it was not rescinded within the five-year time limit permitted by law (section 246(a), Immigration and Nationality Act; 8 U.S.C. 1256(a)). The Board believes that in the absence of timely rescission the applicant cannot be denied any nondiscretionary rights which are the incidents of proper adjustment. The Service disagrees with this view, at least as it applies to an alien who has departed from the United States and seeks to reenter.

The law and facts have been fully stated in previous orders. Briefly, in 1949 the applicant entered the United States on a displaced person's visa which he had fraudulently procured. In 1951 he abandoned the United States and went to South America where, shortly after his entry, he assumed the name of A—S—, allegedly a fictitious name and one which he has used to date. In 1954 he entered the United States as a visitor under the name of A—S—. In 1955, using the name of A—S—, he improperly secured the right to be a permanent legal resident of the United States under section 245 of the Immigration and Nationality Act. He was not entitled to the adjustment because he had not been lawfully admitted; he had been inadmissible at the time of entry as one who had procured a visa by fraud in 1949. The adjustment of status was not rescinded within the five years during which such action could be instituted. The applicant has reentered the United States from time to time—in 1957 on a reentry permit issued in the name of A—S—, and on other occasions, as he is attempting to do at the present, on the basis of a Form I-151A (alien registration card) which at the time of application for admission (August 1960) was sufficient to authorize the admission of an alien admitted for permanent residence returning to resume residence (24 F.R. 2583, April 3, 1959).

The Service apparently agrees that where there has been no rescission of the adjustment of status, there can be no expulsion of an alien (who did not depart after the adjustment) on grounds which made the alien ineligible for the adjustment. Thus, we would assume there is agreement that the alien who was ineligible for adjustment because he is a criminal, a subversive, or a person who procured a document by fraud can enjoy the fruits of his adjustment as long as he remains in the United States. However, the Service feels that in exclusion proceedings, even though there has been no rescission, it is proper to exclude the alien on the grounds which it could not have used to deport him prior to his departure. Thus, the examining officer urges that the applicant is inadmissible under section 212(a) (19), Immigration and Nationality Act (8 U.S.C. 1182(a)(19)), because he had procured a visa by fraud in 1949. However, the Board

549

is of the belief that since Congress provided that the adjustment could not be questioned after the five years which have passed since the adjustment, the applicant must be considered as having been admitted for permanent lawful residence. It follows, in the Board's opinion, that any attempt to exclude the applicant on the ground which made him ineligible for the adjustment is an attack upon the status which Congress stated should no longer be questioned. The adjustment gave the applicant a legal status in the United States. We can see no logical reason why Congress which desired to protect this status by a statute of limitations, even though the status had been acquired by one who was not eligible, should wish to withdraw that protection because the alien had left the country and reapplied for admission on the basis of the very adjustment of status which they had protected. Since one lawfully admitted for permanent residence is entitled by law to reenter to resume residence on the basis of an alien registration card following a visit such as the applicant made, he must be permitted to enter.

We do not know why Congress provided a statute of limitations to prevent attack upon the right of permanent residence belonging to an alien who had secured it by an adjustment, but failed to provide similar protection for the one who secured his right through the visa process; however, there is a difference, and it is this difference which now prevents the applicant's right to permanent residence from being questioned because he was ineligible to receive it.

The Service motion raises a matter which was not an issue at the exclusion proceeding. The motion urges that the applicant is inadmissible because, although his true name is J—, he used the name S— on the reentry permit in 1957 and used, and is attempting to use, a Form I-151A issued in the name of S— (he received it as part of the adjustment of status). We do not believe that the applicant is inadmissible because of his use of the name S—. He did not adopt it to defraud this Government. It is the name by which he has been generally known since 1951 (*United States ex rel. Leibowitz* v. *Schlotfeldt*, 94 F.2d 263 (C.A. 7, 1938)). Moreover, since it is the Board's belief that it must regard the applicant for the purpose of immigration laws as the S— who obtained the right to legal residence in 1955 with all the incidents flowing out of that right, we do not believe that his use of the name under which he received the adjustment can be considered a new and additional violation of the immigration laws. To so consider it, would be to do indirectly what cannot be done directly—challenge the applicant's status as a lawful resident acquired by the adjustment.

To complete the discussion, we would point out that the adjustment of status obtained by the applicant would not free him from liability to exclusion or expulsion if an act committed by him after

the adjustment placed him in any of the categories which make an alien excludable or deportable.

**ORDER:** At the request of the Commissioner under the authority contained in 8 CFR 3.1(h)(1)(iii), the case is referred to the Attorney General for review of the Board's decision.

**BEFORE THE ATTORNEY GENERAL**
(January 22, 1962)

The Board of Immigration Appeals, pursuant to 8 CFR 3.1(h)(1) (iii), has, at the request of the Commissioner of Immigration and Naturalization, referred its decision of June 2, 1961, in this case to me for review. The Board of Immigration Appeals affirmed an order of a special inquiry officer holding that the applicant was admissible into the United States as a returning lawfully admitted resident alien. The decision raises a novel and important question of interpretation of the immigration laws.

The question arises in the following way: Applicant, whose true identity is apparently B—J—, a native of Czechoslovakia, first entered the United States in 1949 on a displaced person's immigration visa issued to H—J—, a native of Germany, an identity which the applicant had assumed in applying for the visa. In 1951 applicant abandoned his residence in the United States and left for South America. After passing through Brazil on a transit visa, he arrived in Paraguay. Although five years of residence in Paraguay is a prerequisite to the acquisition of Paraguayan citizenship, applicant apparently acquired Paraguayan citizenship within several months of his arrival. For purposes of his Paraguayan naturalization he assumed the identity of A—S—, a native of Germany. In 1953 he entered Brazil, and in January 1954 he was admitted to the United States as a visitor under the name of A—S—. In September 1954 he was married to a lawfully resident alien. In April 1955, pursuant to section 245 of the Immigration and Nationality Act (66 Stat. 217 (1952)), applicant, under the assumed identity of A—S—, had his status adjusted to that of an alien lawfully admitted for permanent residence. Section 245, then, as now,[1] required, among other things, that an alien to be eligible for adjustment had to be admissible to the United States for per-

---

[1] 74 Stat. 505 (1960), 8 U.S.C. (Supp. II) § 1255: "(a) The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved."

551

manent residence under the Act. If applicant had at one time procured a visa by fraud or willful material misrepresentation, this would have made him ineligible for adjustment.[2]

In 1956 applicant spent several hours in Mexico obtaining a divorce from his wife. Between 1957 and 1960, he left and re-entered the United States several times. On reentry he either presented the alien registration card issued to him as A—S— or reentry permits also issued to him in that name.

On applicant's last attempt to reenter the United States at Miami Beach, Florida, in August 1960, the Immigration and Naturalization Service sought to exclude him under section 212(a)(19) of the Act [2] on the ground that his initial entry in 1949 was procured by fraud or willful misrepresentation of a material fact. The special inquiry officer who heard the exclusion proceeding, although concluding that the applicant had procured his 1949 displaced person's visa by fraud or willful material misrepresentation, held that the passage of five years since the adjustment of applicant's status barred his exclusion on a ground which existed prior to such adjustment. While Congress in section 246 of the Act, 8 U.S.C. 1256, authorized the the Attorney General to rescind action granting adjustment if the alien was not in fact eligible for such adjustment,[3] he pointed to the fact that the Attorney General's rescission authority was limited to five years following the adjustment. It was his view that exclusion or deportation proceedings based upon grounds which would also have supported rescission were indirect attacks on the adjustment of applicant's status to that of an alien lawfully admitted for permanent residence and that Congress, in barring rescission of the adjustment after five years, also intended to bar such indirect attacks. Since the fraudulent procurement of a visa in 1949 would have been grounds for rescission of the applicant's status, and since the passage of more than five years barred rescission, the special inquiry officer concluded that applicant could not

[2] Section 212(a)(19), 8 U.S.C. 1182(a)(19), excludes from admission into the United States "[a]ny alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact."

[3] ". . . If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 245 or 249 of this Act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made."

now be excluded on that ground.[4] Accordingly, he directed the applicant's admission. The Board of Immigration Appeals has affirmed on the basis of the special inquiry officer's opinion.

I cannot agree that an adjustment of status under section 245 and the five-year limitation on rescission provided in section 246 have the effects attributed to them by the special inquiry officer and the Board of Immigration Appeals.

Neither the exclusion provisions of the Act, section 212 (8 U.S.C. 1182), nor its deportation provisions, section 241 (8 U.S.C. 1251), contain statutes of limitations.[5] Consequently, an alien who upon entry acquires the status of an alien lawfully admitted for permanent residence is nevertheless subject to deportation at any future time, or exclusion if he seeks to reenter the United States after departure, for conduct preceding his acquisition of that status. By virtue of the decision below, an alien initially admitted as a nonimmigrant who subsequently acquires the status of a lawfully admitted permanent resident through the adjustment procedure provided for in section 245 of the Act, acquires, through the five-year limitation on rescission of his status, the additional advantage of a statute of limitations immunizing him from exclusion or deportation on grounds founded on events preceding the acquisition of his status.

There is no indication that Congress intended to afford such an advantage to one acquiring permanent resident status by adjustment under section 245. That section was first enacted in 1952. 66 Stat. 217. Prior to that time, an alien initially admitted as a nonimmigrant could only change his status to that of an alien lawfully admitted for permanent residence by undergoing a complicated procedure called preexamination. Pursuant to that procedure, the alien was required to leave the United States in order to obtain an immigration visa from a consul and reenter. See, Gordon and Rosenfield, *Immigration Law and Procedure*, 711–12 (1959). This, of course, entailed both a burdensome expense and inconvenience for the alien. It did not, however, with respect to deportation or exclusion proceedings thereafter commenced, put him in any better position than an alien initially admitted for permanent residence without preexamination. The adjustment procedure of section 245 was "specifically devised to obviate the need for departure and re-

---

[4] The Service apparently conceded that *deportation* is barred but contended that this did not affect *exclusion*. I do not believe the question in this case can be satisfactorily resolved on the basis of such a distinction.

[5] The Act not only fails to provide a statute of limitations for deportability but since the grounds for deportability which it establishes apply retroactively to conduct preceding its enactment (section 241(d), 8 U.S.C. 1251(d)), it has been construed to apply to such conduct even in cases where the period of limitations provided by previous law would have barred deportation. *Lehmann* v. *Carson*, 353 U.S. 685 (1957).

entry in the cases of aliens temporarily in the United States. . . ." H. Rept. No. 1365, 82d Cong., 2d Sess., p. 63 (1952). I find nothing to suggest that the section was intended to ultimately immunize an alien from deportation or exclusion thereafter on grounds which would have made him initially inadmissible. In 1958, subsequent to this applicant's adjustment of status, Congress liberalized the adjustment procedure of section 245. The Senate Report accompanying the amendment of that section was careful, however, to emphasize that the amendment was not designed either to "benefit the alien who has entered the United States in violation of the law" or to "affect the statutory standards of eligibility for immigration into the United States." S. Rept. No. 2133, 85th Cong., 2d Sess., p. 2. There is no reason to suppose that section 245, as originally enacted, had any broader purpose.[6]

From this background, it seems clear that section 245 was intended to perform no other function than to permit nonimmigrants to attain permanent resident status without leaving the United States. Nor is there any basis for believing that the five-year limitation in section 246 on the Attorney General's rescission authority has the effect of broadening the benefits conferred by a section 245 adjustment so as to place nonimmigrants who thereby acquire the status of aliens lawfully admitted for permanent residence in a better position than those who have initially entered as permanent residents.

Section 246 permits the Attorney General to rescind adjustment of status within five years. In the words of the statute, rescission places an alien in the same position "as if the adjustment of status had not been made"; that is, one whose status was adjusted under section 245 to that of an alien "lawfully admitted for permanent residence" is, through rescission, returned to nonimmigrant status. Consequently, the effect of the five-year limitation on rescission is simply to bar the Attorney General from returning an alien with adjusted status to the category of nonimmigrant. I cannot agree

---

[6] That Congress did not intend section 245 to confer any protections against deportation or exclusion is brought out more clearly by contrasting its provisions with those of section 244 of the Act (8 U.S.C. 1254), and section 249 of the Act (8 U.S.C. 1259). Section 244 allows the Attorney General to suspend the deportation of an alien who is found to be deportable. Section 249 now authorizes him to make a record of lawful admission for an alien except where the alien is deportable on grounds specified in that section. Section 249 has been read as authorizing the Attorney General to waive known grounds of deportation other than those specified in that section. *Matter of L—F—Y—*, 8—601 (1960). Thus, these provisions confer upon the Attorney General a "pardoning" authority. In contrast, section 245 permits adjustment only where the applicant is "eligible to receive an immigrant visa and is admissible to the United States for permanent residence." Section 245 does not give Attorney General "pardoning" authority.

that, in performing this narrow function, the time limitation imposed on rescission by section 246 was intended to be read as qualifying the express authority provided by the Act to deport or exclude aliens on proper grounds without time limitation. Such an extreme interpretation would require either specific statutory language or at least a clear indication in the legislative history that Congress intended the statute to be so read. There is neither.[7]

I recognize that as I construe the time limitation in section 246 it may be of little practical value to the alien. While the limitation obviously prevents the Attorney General from returning the alien to the category of a nonimmigrant on the basis of conduct which would have justified a rescission of adjustment, it could be argued that this entails no real benefit to the alien since the same conduct nevertheless can be utilized independently as a ground for his deportation or exclusion. This makes it difficult to ascertain precisely why Congress enacted the time limitation. But whatever the purpose Congress may have intended the time limitation to serve, it is clear that it could not, consistently with the policies underlying the provisions of the immigration laws here involved, have intended to confer upon an alien of adjusted status the benefit of immunity from exclusion or deportation for prior conduct.[8]

---

[7] The time limitation provision is apparently the result of a recommendation made by the Senate Committee on the Judiciary in its study of the immigration and naturalization systems of the United States. S. Rept. No. 1515, 81st Cong., 2d Sess., p. 611 (1950). No explanation is given there of the purpose to be attributed to the provision. Nor is it discussed at later points in the legislative history mentioning the time limitation. See H. Rept. No. 2096, 82d Cong., 2d Sess., p. 128 (1952) ; H. Rept. No. 1365, 82d Cong., 2d Sess., p. 63 (1952) ; S. Rept. No. 1137, 82d Cong., 2d Sess., p. 26 (1952).

[8] Congress' reasons for providing the five-year limitation are nowhere clearly indicated. See note 7, supra. As far as I can determine, the significance which Congress attached to the five-year limitation was that it cut off the availability of a procedure which, although to all intents and purposes would establish deportability, permitted the Attorney General to act more informally and expeditiously than he could in a deportation proceeding. The rescission procedure apparently resulted from congressional recognition that a means more informal and expeditious than deportation was needed to correct mistakes made in granting permanent residence to nonimmigrant aliens through adjustment of status. Experience under preexamination had shown that such mistakes were more likely to occur where eligibility for permanent resident status was determined by government officers located in the United States who did not ordinarily have the first-hand information available to American consuls located in a prospective immigrant's native country. See S. Rept. No. 1515, 81st Cong., 2d Sess., p. 606 (1950). This view of rescission is borne out by the fact that section 246 in authorizing rescission does not provide the explicit and detailed procedural requirements laid down for deportation proceedings by section 242(b) of the Act (8 U.S.C. 1252(b)). At the same time Congress must have been aware that rescission by returning the alien to nonimmigrant status, in fact, established his deportability on the

The special inquiry officer, in reaching a contrary conclusion, relied in part on an earlier Board decision, *Matter of V—*, 7—363 (1956). There, deportation proceedings were brought against an alien on the ground that she had entered the United States without a valid entry document as required by section 212(a)(20), 8 U.S.C. 1182(a)(20). She had presented a Form I–151A (alien registration card) to obtain entry. The card had been issued pursuant to the creation of a record of lawful admission for permanent residence under an earlier version of section 249 of the Act, 66 Stat. 219 (1952). It appeared, however, that she obtained her record of lawful admission by concealment of a material fact. Accordingly, the Service contended that the Form I–151A which she obtained on the basis of that record was not a valid entry document. The Board held, however, that since her record of lawful admission had not been rescinded in accordance with section 246 she could not be deported on the ground that she had entered without a valid entry document. The special inquiry officer in the instant case has read *Matter of V—*, *supra*, as standing for the general proposition that an alien registered for lawful admission under section 249, or whose status is adjusted under section 245, cannot be deported or excluded on grounds which existed prior to such registration or adjustment without first rescinding that action, and if, as here, rescission of adjustment is barred by the five-year limitation in section 246, exclusion is also barred.

*Matter of V—*, *supra*, is not controlling in the instant case. The only question before the Board in *Matter of V—* was whether the Service was entitled to establish the alien's ineligibility for the record of lawful admission in a deportation proceeding where the rescission procedure, specifically provided to determine that issue, was available. It did not have before it the question whether, had rescission *no longer been available* due to the lapse of five years, the record of lawful admission would not only bar deportation or exclusion on a ground which required an explicit showing that the record was improperly made, but on a preexisting ground which,

---

ground that he had overstayed the period of his admission. The five-year limitation would thus seem to be a recognition that it would be unfair to permit indefinitely such serious consequences to be effected through a somewhat informal procedure. After five years, the Attorney General is, therefore, required to correct mistakes in granting permanent resident status to those initially admitted as nonimmigrants in the same manner as in the case of other aliens, *i.e.*, through deportation. I should note in passing that while Congress may have *permitted* the Attorney General to make use of more informal procedures in rescission, in practice under the governing regulation there is little difference between the safeguards afforded an alien in deportation and that afforded him in rescission. See 8 CFR 246.12(a) and (b).

although independently sufficient as a basis for exclusion, would also have supported a rescission.

I conclude that since section 246 only limits the Attorney General's authority to *rescind* an adjustment of status, the lapse of more than five years since applicant's adjustment does not bar an exclusion proceeding based upon the alleged fraudulent procurement of an entry visa prior to his adjustment of status. However, because the determination by the special inquiry officer that the 1949 visa was procured by fraud or material misrepresentation in violation of section 212(a)(19) was made prior to my decision of October 2, 1961, in *Matter of S— and B—C—*, 9—436, in which I formulated standards for determining questions of materiality arising under that section, I am remanding this case to the Board for such action as is consistent with my opinion in *Matter of S— and B—C—*, *supra*.

The Service in its motion for reconsideration, denied by the Board on August 17, 1961, also contended, for the first time, that applicant's entry into the United States under the name of A—S—, and subsequent to the adjustment of his status, provided an additional ground for excluding him. This ground was neither urged nor considered in the hearing before the special inquiry officer. It has been held that grounds for exclusion presented but not passed upon at the hearing may be considered on administrative appeal (*United States ex rel. Jelic* v. *District Director*, 106 F.2d 14, 19 (C.A. 2, 1939)). I feel, however, that it would be unfair for the Board, on appeal, or the Attorney General, on review, to consider grounds not even presented at the hearing before the special inquiry officer. I, therefore, do not consider the additional ground for exclusion now urged by the Service.

### BEFORE THE BOARD
(January 24, 1962)

**ORDER:** In accordance with the opinion of the Attorney General of January 22, 1962, hereunder, the case is remanded to the special inquiry officer for further consideration in accordance with that opinion, and *Matter of S— and B—C—*, 9—436.