## MATTER OF SAUNDERS

### In Deportation Proceedings

### A–20490949

*Decided by Board January 27, 1977, and August 25, 1977*

(1) Respondent applied for adjustment of status to that of a lawful permanent resident under section 245 of the Immigration and Nationality Act as the spouse of a United States citizen. In the application respondent disclosed two convictions in England for possession of marijuana. The second of those convictions was under the Misuse of Drugs Act of 1971 which made guilty knowledge a relevant factor in determining guilt. Therefore this case is distinguishable from *Lennon* v. *INS*, 527 F.2d 187 (2d Cir. 1975). The second conviction renders the respondent subject to deportation under section 241(a)(11) of the Act. See *Matter of Pasquini*, Interim Decision 2496 (BIA 1976).

(2) During the five-year period immediately following an alien's adjustment of status under section 245 of the Act, if it appears that the alien was in fact ineligible for that adjustment, the adjustment must first be rescinded in proceedings brought under section 246 of the Act before deportation proceedings can be instituted.

(3) Notwithstanding that the rescission proceedings were timely begun, the Board ordered the deportation proceedings terminated where the notice of intention to rescind was inadequate under 8 C.F.R. 246.1 and did not give respondent an opportunity to be heard, and respondent never received final notice that his adjustment had been rescinded.

(4) Service motion to reconsider order terminating deportation proceedings, denied.

CHARGE:

Order: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251(a)(11)]—Convicted of [violation of] law relating to illicit possession of marihuana

ON BEHALF OF RESPONDENT:
Gerald H. Robinson, Esquire
300 Standard Plaza
Portland, Oregon 97204

Counsel of Record:
George V. Des Brisay, Esquire
1123 S.W. Yamhill Street
Portland, Oregon 97205

ON BEHALF OF SERVICE:
George Indelicato
Appellate Trial Attorney

**Before the Board, January 27, 1977**

In a decision dated January 30, 1976, the immigration judge found the respondent deportable as charged and ordered his deportation to Great Britain. The respondent has appealed from that decision. The appeal will be sustained.

The respondent, a native and citizen of Great Britain, was convicted in England for possession of marihuana in 1969 and 1971. He entered the United States as a nonimmigrant visitor for pleasure in 1973 and subsequently married a United States citizen. The respondent thereafter made an application for adjustment of status to that of a lawful permanent resident under section 245 of the Immigration and Nationality Act. In connection with this application the respondent disclosed the fact of his convictions. The Immigration and Naturalization Service granted the application on October 1, 1974, and the respondent's status was adjusted to that of a lawful permanent resident.

Shortly thereafter, on November 13, 1974, the Acting District Director sent a letter to the respondent notifying him of his intention to rescind the respondent's permanent resident status pursuant to the provisions of section 246 of the Act and informing him of his opportunity to answer within 30 days. The letter, which is in the record before us, states that the respondent was ineligible for adjustment of status under sections 212(a)(23) and 212(a)(19) of the Act. It contains the following statements:

(1) You have been found ineligible under Section 212(a)(23) for two convictions of illegal possession of narcotic drugs or marihuana to receive a visa for entry into the United States.

(2) You have been found ineligible under Section 212(a)(19), for obtaining or procuring a visa or other documentation to enter the United States by fraud or by wilfully misrepresenting a material fact, by not revealing the prior arrests and convictions, at the time you obtained your nonimmigrant visa at the American Embassy in London.

The respondent, who did not receive the letter of November 13, 1974, but learned of the action against him from a friend who received the letter, wrote the Service from Mexico requesting a six-month period within which to depart from the United States. In his letter he stated that he did not deny the allegations made against him. On December 23, 1974 the District Director notified the respondent that his permanent resident status had been rescinded. This letter was returned undelivered to the Service. These deportation proceedings were subsequently instituted against the respondent under section 241(a)(11) of the Act which provides that any alien who has been convicted of a violation of any law relating to the illicit possession of marihuana shall be deported.

On appeal counsel for the respondent raises three contentions: he argues that (1) under the court's decision in *Lennon* v. *INS*, 527 F.2d 187 (2 Cir. 1975), the convictions involved here do not subject the respondent to deportation under section 241(a)(11); (2) the respondent had a right to a full rescission hearing which was denied; (3) the Service, which had knowledge of the convictions prior to the grant of adjustment of status, is estopped from deporting the respondent on the basis of those convictions.

With respect to counsel's first contention, in *Lennon* the court held that Congress did not intend to impose the harsh consequences of exclusion upon an individual convicted of possession of drugs under a foreign law that made guilty knowledge irrelevant. See *Matter of Lennon*, Interim Decision 2304 (BIA 1974), reversed on other grounds, *Lennon* v. *INS*, *supra*. The court's interpretation of Congressional intent in *Lennon* applies equally to proceedings instituted against an alien under the deportation provision of section 241(a)(11). The court concluded that the British statute under which the alien had been convicted imposed absolute liability for unauthorized possession of drugs and vacated the order of deportation.

The alien in *Lennon*, was convicted under the British Dangerous Drugs Act of 1965. In the present case at least one of the convictions was had under a statute different from that involved in *Lennon*, namely the Misuse of Drugs Act of 1971, a law which repealed the 1965 Dangerous Drugs Act. Section 28 of the Misuse of Drugs Act, which applies to proceedings against persons charged with possession of marihuana, provides, in pertinent part:

> 28.—(3) Where in any proceedings for an offence to which this section applies it is necessary, if the accused is to be convicted of the offence charged, for the prosecution to prove that some substance or product involved in the alleged offence was the controlled drug which the prosecution alleges it to have been, and it is proved that the substance or production question was that controlled drug, the accused—
>
>> (a) shall not be acquitted of the offence charged by reason only of proving that he neither knew nor suspected nor had reason to suspect that the substance or product in question was the particular controlled drug alleged; but
>>
>> (b) shall be acquitted thereof—
>>
>>> (i) if he proves that he neither believed nor suspected nor had reason to suspect that the substance or product in question was a controlled drug; or
>>>
>>> (ii) if he proves that he believed the substance or product in question to be a controlled drug, or a controlled drug of a description, such that, if it had in fact been that controlled drug or a controlled drug of that description, he would not at the material time have been committing any offence to which this section applies.

A defendant, then, who can prove lack of guilty knowledge is not guilty under the terms of the statute. Consequently, guilty knowledge is relevant, all that is required under *Lennon*. Therefore, this case is distinguishable from *Lennon*. See *Matter of Pasquini*, Interim Decision 2496 (BIA 1976).

With respect to counsel's second contention, section 246 of the Act provides, in pertinent part:

> (a) If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 245 or 249 of the Act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an

adjustment of status to such person and cancelling deportation in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this Act to the same extent as if the adjustment of status had not been made. . . .

In those cases in which section 246 is applicable, its provisions must be complied with before deportation proceedings may be instituted. *Matter of V—*, 7 I. & N. Dec. 363 (BIA 1950). If, within five years of the alien's adjustment of status under section 245, it appears that the alien was ineligible for that adjustment, his permanent resident status must be rescinded pursuant to section 246 before deportation proceedings can be instituted against him.

In the present case, rescission proceedings were instituted against the respondent prior to these proceedings. Counsel, however, has raised a question as to whether the respondent had notice of the procedural safeguards guaranteed him in those proceedings. See generally 8 C.F.R. 246. In this case defenses that would have been available to the respondent in rescission proceedings may have been lost for failure to raise them. Under these circumstances, we shall terminate deportation proceedings. The District Director, of course, may determine to reinstitute rescission proceedings against the respondent. That decision lies generally within his discretion. See *Matter of Quan*, 12 I. & N. Dec. 487 (Deputy Assoc. Commr. 1967).

In view of the above opinion, we need not address the issue of estoppel.

ORDER: The appeal is sustained; the proceedings are terminated.

### Before the Board August 25, 1977

BY: Milhollan, Chairman; Wilson, Maniatis, and Maguire, Board Members. Concurring Opinion by Board Member Appleman.

The Service has moved that we reconsider our decision dated January 27, 1977 sustaining the respondent's appeal and terminating the proceedings. The motion will be denied.

In our decision we held that, because five years had not passed since the respondent had his status adjusted to that of a lawful permanent resident under section 245 of the Immigration and Nationality Act, his permanent resident status must be rescinded pursuant to section 246 before deportation proceedings could be instituted against him. Because it appeared that the respondent did not have adequate notice of the procedural safeguards guaranteed him in the rescission proceedings which had been brought against him, we ordered that the deportation proceedings be terminated. We pointed out in our opinion that the decision whether to reinstitute rescission proceedings against him lies within the discretion of the District Director. In view of our decision to terminate, we did not reach the issue of estoppel which was raised by the respondent.

The Service presents two issues in its Motion to Reconsider. First, it contends that the respondent had adequate notice of the rescission proceedings against him. With respect to this issue, the respondent testified that, while he was on vacation, the notice of intention to rescind was mailed to him. The person living in the respondent's home signed the return receipt and informed the respondent by telephone of the contents of the letter. (Tr. p. 12). The notice dated December 23, 1974, advising the respondent that his status had been rescinded was not received by the respondent and was returned to the Service undelivered. (Tr. p. 15).

Ordinarily, the notice of intention to rescind provided the respondent would be sufficient under section 246. See 8 C.F.R. 246.1. However, this case presents unusual circumstances, in particular, an intention by the Service to rescind the adjustment on the basis of evidence which was provided by the alien at the time his status was adjusted. Moreover, the respondent was on vacation at the time of the proceedings, and there is evidence that the Service knew it. (Tr. p. 12, 13). The respondent also contends that another Service office informed him that his adjustment could be rescinded only after the commission of a felony. (Tr. 13). Under these circumstances, we conclude that the notice of intention to rescind provided the respondent was insufficient. The respondent did not have an adequate opportunity to be heard—a safeguard provided him under the law.

With respect to the first contention of the Service, it is also argued that *Matter of Guan*, 12 I. & N. Dec. 487 (Dep. Assoc. Comm. 1967), a case cited in our January 27, 1977, decision, is distinguishable. Reference to our decision will show that *Matter of Guan* was cited as support for the point that the District Director is not compelled to institute rescission proceedings in every case. His decision is a matter for the exercise of discretion.

The Service also contends that an alien whose status is adjusted under section 245 is not thereby exempt from the exclusion and deportation provisions of the Act. We agree. Relying on *Matter of V—*, 7 I. & N. Dec. 363 (BIA 1956), we merely held that, during the five years subsequent to the alien's adjustment, the adjustment must be rescinded where it appears that the alien was not in fact eligible for the adjustment before deportation proceedings can be instituted against him on the basis of his ineligibility. It is the Service's contention that the holding in *Matter of V* is inapplicable because in the present case, unlike in *Matter of V*, the ground of ineligibility could have subjected the respondent to deportation prior to the adjustment. We disagree. We are of the opinion that the distinction is not material.

The Service also claims that our holding with respect to the necessity of first rescinding the adjustment before deportation proceeding can

be instituted is erroneous in view of the Attorney General's decision in *Matter of S—*, 9 I. & N. Dec. 548 (BIA 1961; Attorney General 1962; BIA 1962). In *Matter of S—*, the Attorney General was presented with a case in which the five year period had passed and the alien was claiming that, as a consequence, he was saved from deportation on grounds which existed prior to the adjustment. In the present case, five years have not passed, since the respondent's status was adjusted. Therefore, *Matter of S—*, is inapposite.

Our decision of January 27, 1977, is correct. The Motion to Reconsider will be denied.

**ORDER:** Motion to Reconsider is denied.

Irving A. Appleman, Member, Concurring:

Respondent is a 29-year-old native and citizen of Great Britain. He entered the United States as a nonimmigrant visitor in 1973, married a United States citizen on September 27, 1973, and in November of 1973 filed an application for adjustment of status as permanent resident. In his application he disclosed two convictions in England for possession of marijuana, in 1968, for which he received a $50 fine, and in 1973, for which he received a $100 fine. The records of these convictions were presented to the Service adjudicator, after which the application was approved, and on October 1, 1974, his status was adjusted to that of a lawful permanent resident.

On November 13, 1974, an Acting District Director sent a letter to the respondent advising of an intention to rescind the adjustment. The respondent, who at the time was in Mexico, never received this letter, but was advised telephonically of its contents through a friend. On December 23, 1974, a letter notifying the respondent that his permanent resident status had been rescinded was sent to the respondent. It was returned undelivered. At no time did the respondent demand a hearing, under 8 C.F.R. 246, nor did he ever receive one.

These deportation proceedings were begun by service of an Order to Show Cause on October 2, 1975. He is charged with deportability under section 241(a)(11), 8 U.S.C. 1251(a)(11), because of the narcotic convictions.

In our decision of February 4, 1977, sustaining the appeal and terminating proceedings, we noted that the respondent had raised three contentions. The first of these, relating to the Second Circuit decision in *Lennon* v. *INS*, 527 F.2d 187 (1975), was ruled on adversely to the respondent, because we are concerned with a different statute than in *Lennon*. As to the second, we found merit, in the somewhat unusual facts of the case, to the argument that there was doubt whether the respondent had adequate notice of the procedural safeguards guaranteed him under section 246 of the Act (8 U.S.C. 1256), and 8 C.F.R. 246.

331

We therefore ordered termination of the deportation proceedings to afford the Service a choice whether or not to reinstitute rescission proceedings. In view of this holding it was not necessary to reach the serious issue of estoppel, the third contention raised on appeal.

In the motion for reconsideration now before us, the Service not only argues that there was adequate compliance with notice requirements and due process safeguards in the rescission proceeding, but that, in view of the Attorney General's ruling in *Matter of S*, 9 I. & N. Dec. 548 (1962) the institution of a rescission proceeding was unnecessary.

## I

It will be noted that this alien, adjudicated a lawful permanent resident in 1974, would have defenses available to him in a rescission proceeding which are not available to him in these deportation proceedings. An initial consideration would be whether the institution of rescission proceedings was warranted. While rescission may occur, in the literal language of the statute, for "lack of eligibility" alone (Section 246, 8 U.S.C. 1256), it is, in the experience of this Member, most unusual to attempt rescission where some element of fraud or concealment was not involved in the adjustment. Respondent could certainly argue that the congressional intent of the rescission provision did not cover one in his position. Alternatively, he could urge that as a matter of prosecutive judgment, quite apart from estoppel, having fully disclosed a relatively minor arrest record,[1] and having effected complete rehabilitation (so far as the record before us reveals) the Service should not pursue rescission. More importantly, in rescission proceedings, the alien could raise the estoppel issue in the direct framework of the claimed prejudicial action, with appropriate appeals and review if decision were adverse.

In contrast, in deportation proceedings, if rescission is viewed as a *fait accompli*, the respondent has lost his favored status as a lawful permanent resident, and the inquiry is limited to the lawfulness of his status before the adjustment occurred—in this case, whether in 1974 he had remained longer as a nonimmigrant than authorized. (Section 246 8 U.S.C. 1256).

There is no question that the respondent was seriously prejudiced by the failure to have a hearing in the rescission proceedings. The vigor with which the Service resists affording him that opportunity is somewhat startling, given the somewhat unusual facts of the case. It is a fact that the respondent did not receive the letter advising of an intention to rescind. There is considerable question, from this record, what was read to him during the long distance telephone call by his "friend." Respon-

[1] Under present Service policies, either of the offenses, taken alone, would probably not lead to the institution of deportation proceedings against a lawful permanent resident (See Operation Instruction 242.1(a)(28), 4-27-77).

dent's letter of December 9, 1974, from Mexico (Ex. 5) says that he has "heard of the allegations." Was he also fully aware of his rights to a hearing and to make a defense? His letter does not indicate it. On the contrary it reveals a woeful ignorance of his position. Far from reflecting an understanding that the Service letter was a *Notice Of Intention To Rescind*, only; he appears to have accepted the letter as a determination of deportability, something which may or may not occur *after* rescission takes place and which usually requires the instutition of separate proceedings, as this case illustrates. Nowhere does Exhibit 5 reflect respondent's understanding of his rights under the law. On the contrary he asks for "compassion" and "understanding," and for a few months to put his affairs in order before leaving. He states his intention to contact the Service on arrival in the United States. Two weeks later, after an *in absentia* determination, the letter advising of the fact of rescission went out.

One cannot help question the "compassion" and "understanding" received by this lawful permanent resident, married to a United States citizen, with a United States citizen child, who after complete disclosure of his "crimes," suddenly gets word, as he erroneously understands it, that his permanent residence has already been taken away and he must leave the country forthwith. In these circumstances I completely concur in that portion of the majority decision which rejects the Service argument that there was adequate compliance with procedural due process requirements in the rescission action. In this connection it is worth noting that the burden the United States bears in a rescission proceeding is the same clear, convincing and unequivocal burden borne in deportation, *Waziri* v. *INS*, 392 F.2d 55 (9 Cir. 1968).

## II

It is the further contention of the Service that this alien is subject to deportation proceedings in any event, and even without the institution of rescission proceedings, since the ground for deportation existed prior to the adjustment of status. As to this I am in agreement with the majority that the interpretation given the statute by the Attorney General in *Matter of S—*, 9 I. & N. Dec. 548, (BIA 1962), does not warrant the conclusion the Service urges, but I reach that result for somewhat different reasons.

*Matter of S—* was an exclusion proceeding. The alien fraudulently obtained an adjustment of status in April 1955, concealing the fact that he had obtained a visa by fraud in 1949. No rescission occurred within five years. Instead, the facts came to light when he attempted to reenter the United States in August 1960, as a lawfully returning resident alien after a visit abroad. The Board held that the passing of the five years operated as a statute of limitation barring exclusion on

any ground which existed prior to the adjustment. Pointing to the Congressional history, the Attorney General noted that adjustment under section 245 was never intended to confer greater rights than those enjoyed by a permanent resident who gained his status through entry with an immigrant visa. Since there exists no statute of limitation as to the latter, and he may be deported or excluded at any time, for proper cause, the same treatment must be accorded the alien adjusted under section 245, the replacement for the old preexamination procedure.

What then is the effect and meaning of the five-year limitation in section 246, on rescission of permanent resident status? In this area *Matter of S—* is somewhat vague, and one can readily appreciate the Service difficulty in applying the provision. The solution the Service offers here, however, is for all practical purposes, to read section 246 out of the statute altogether. I cannot agree that Congress intended section 246 to be that meaningless.

The majority decision points to one instance where section 246 should be applicable, i.e., where deportation (or exclusion) is sought, as here, *within* the five-year period. This has the virtue of reconciling *Matter of S—*, as the Attorney General pointed out, with the earlier decision of this Board in *Matter of V—*, 7 I. & N. Dec. 363 (BIA 1956). In the Attorney General's language, in *Matter of V—* (as here) the rescission procedure, specifically provided to determine the issue of the alien's ineligibility for the record of lawful admission, was "available," the five years not yet having elapsed; whereas in *Matter of S—* this was not the case. The majority decision thus finds some support in *Matter of S—*. However, the implication which flows from this is that *within* the five years a deportation or exclusion proceeding based on a ground rendering the alien ineligible for the adjustment must be preceded by rescission, but that *after* the five years there need be no compliance with section 246. The difficulty with this is the lack of any reason for such a distinction. On the contrary, why should the alien who had been a lawful permanent resident for more than five years, with correspondingly greater equities, be in a far worse position than one who has resided here for a shorter period of time?

In my opinion section 246 does permit of another interpretation. As to any ground of deportation or exclusion, known and embraced by the grant of adjustment of status, the five-year rule should apply with full force, and operate as a full statute of limitations. As to any ground arising before the grant of adjustment, and not known at the time of adjustment, deportation or exclusion proceedings should lie without regard to rescission and the five-year rule.[2] In short, section 245 should be read as a waiver and adjustment of known grounds of disability. As

[2] As to any ground arising *after* the adjustment of status, it seems clear, under the language of the statute, that deportation or exclusion proceedings lie, regardless of section 246.

to these, if the Service is to deport or exclude, it must first rescind under section 246, and must do so within five years. As to all other grounds the alien is no different from any other permanent resident. With this interpretation the Congressional intent is given meaning and the existing case law reconciled.

Applied here, this interpretation clearly dictates the necessity of a rescission proceeding, and for this reason I have concurred in the result reached by the majority. For the reasons set forth in part I of this opinion, this case is best resolved by a swift and merciful termination of the deportation proceedings.