**Julieta Vitug BIGGS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–70832.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1994.

Decided May 24, 1995.

Ann E. Benson, Anchorage, AK, for petitioner.

Alexander H. Shapiro, Office of Immigration Litigation, U.S. Dept. of Justice, Washington, DC, for respondent.

Before: PREGERSON, CANBY, and BOOCHEVER, Circuit Judges.

CANBY, Circuit Judge:

Julieta Vitug Biggs petitions for review of a Board of Immigration Appeals (BIA) decision finding her deportable and denying her application for discretionary relief. Although we agree that Biggs is deportable, we find that the BIA abused its discretion in evaluating her claim for relief from deportation. Accordingly, we remand to the BIA to allow Biggs to supplement her medical evidence and to reconsider whether she has established extreme hardship warranting relief from deportation.

## BACKGROUND

Biggs arrived in the United States from the Philippines in April, 1980, as a nonimmigrant visitor. During her visit, she married a United States citizen and obtained an adjustment of status to permanent resident. Her marriage later ended in divorce. Biggs remained in the United States, working in Alaska and in California. Occasionally she returned to the Philippines to visit her family, including her two children. Her most recent visit, in the Spring of 1985, lasted one month.

In 1988, she applied for naturalization and voluntarily appeared for an interview with the Immigration and Naturalization Service. During the interview, the INS examiner became suspicious of the circumstances surrounding her marriage and sent her to INS investigators who questioned her further. In the course of the questioning, she stated that she married her former husband only to gain resident status, and that they had not lived together.

The INS issued an order to show cause why she should not be deported as an alien who was excludable, for lack of a valid immigrant visa, at the time she returned from the Philippines in 1985. *See* 8 U.S.C. §§ 1182(a)(20) and 1251(a)(1).[1] Although Biggs did not attend her first deportation hearing, her counsel attended and objected when her affidavit admitting a fraudulent marriage was introduced.

Following the deportation hearing, the Immigration Judge found that the marriage was fraudulent. Accordingly, he ruled that Biggs had been excludable at the time of the 1985 entry and found her deportable. The judge then granted a continuance to permit Biggs to apply for suspension of deportation pursuant to 8 U.S.C. § 1254(a)(1).

At the suspension hearing, Biggs testified that in 1990 she had been diagnosed with lupus, a serious disease affecting the immune system and impairing the movement of the joints. She presented a letter from a rheu-

matologist, Dr. Neal Birnbaum, who had been treating her in San Francisco. The letter described her condition as serious and her prognosis as "guarded." It stated that her "health would be very adversely effected if she were to return to the Philippines." Biggs sought to call Dr. Birnbaum as a telephonic witness (the hearing took place in Alaska), but the Immigration Judge denied the request. He then denied relief.[2]

The BIA affirmed. It found that Biggs' return from her trip to the Philippines in 1985 constituted an "entry" for purposes of deportation, and that her immigrant status was not lawful at that time. It therefore affirmed the finding of deportability. The BIA also upheld the denial of relief from deportation on the ground that Biggs had failed to establish extreme hardship, as required by section 1254(a)(1). The BIA stated that Dr. Birnbaum's letter was "no evidence" that Biggs' health would be affected if she were to return to the Philippines. One Board member dissented on the medical hardship issue. According to the dissent, Biggs made a credible showing of extreme hardship and the immigration judge abused his discretion in denying her the opportunity fully to present her hardship claim.

## ANALYSIS

### I. Deportation; the 1985 Entry

As the basis for deportation, the INS charged and the BIA found that Biggs was excludable when she entered the United States following her 1985 visit to the Philippines. *See* 8 U.S.C. §§ 1182(a)(20), 1251(a)(1). She argues that this return was not an "entry" that would render her deportable as an alien excludable at the time of entry. *See id.;* 8 U.S.C. § 1101(a)(13).

Biggs correctly points out that under certain circumstances, section 1101(a)(13) will except a resident alien's return from abroad from classification as an "entry" for purposes of section 1251(a)(1). *See Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d

---

1. These sections were amended in 1990. The provisions are now to be found at sections 1182(a)(7)(A)(i)(I) and 1251(a)(1)(A).

2. The immigration judge granted Biggs voluntary departure pursuant to 8 U.S.C. § 1254(e). The INS did not appeal that ruling.

1000 (1963) (construing 8 U.S.C. § 1101(a)(13) so to except the returns of resident aliens to the United States if their departures were "innocent, casual and brief"). Biggs asserts that her 1985 departure to visit her family was "innocent, casual and brief," within the meaning of *Fleuti*. In order to qualify for the exception, however, the alien must first satisfy section 1101(a)(13)'s prerequisites. The section limits the entry exception to aliens "having a *lawful* permanent residence in the United States...." (Emphasis added.)

■ Even if we assume, without deciding, that Biggs' trip to the Philippines was "innocent, casual and brief," she does not qualify for the exception because she had secured her permanent resident status through marriage fraud. Biggs thus was not a lawful permanent resident at the time of her 1985 entry. One who has procured a visa or other entry documentation by fraud is excludable by statute. 8 U.S.C. § 1182(a)(19). An alien who was excludable at the time of entry is of course deportable. 8 U.S.C. § 1251(a)(1).

Biggs also argues that, by instituting deportation proceedings against her in 1988 on the ground of her fraudulent status, the INS violated the five-year statute of limitations for rescission of adjustment of status. *See* 8 U.S.C. § 1256(a). Under the above analysis, however, section 1256 and its statute of limitations are not applicable.

■ The INS based its original order to show cause on Biggs' 1985 entry as an alien who was excludable at the time of that entry, and therefore deportable, for having procured a visa by fraud. The Service did not seek any adjustment or rescission of her status. It sought only to deport her. The five-year limitation of section 1256 is simply a

limitation on rescission of the change of status; it is not a limitation on deportation. *Matter of S*, 9 I & N Dec. 548, 555 (BIA 1962). Deportation in fact has no statute of limitations. *Id.* at 553. On this interpretation of Biggs' argument, then, section 1256(a)'s statute of limitations does not come into play.[3]

Biggs was deportable as an alien excludable at the time of entry. We therefore affirm the BIA's finding on that issue.

## II. Suspension of Deportation; Extreme Hardship

Biggs finally argues that the BIA erred in holding her ineligible for discretionary relief from deportation pursuant to 8 U.S.C. § 1254(a)(1). The BIA held that Biggs was statutorily ineligible for such relief because she had not made a showing of extreme hardship. One member dissented, stating that Biggs had made a sufficient showing of medical hardship to require further development of the record on that point.

■ We agree with the dissenter. The BIA must consider all relevant factors in determining whether the alien established extreme hardship, and must demonstrate that it has so done. *Batoon v. I.N.S.*, 707 F.2d 399, 401 (9th Cir.1983). Biggs presented evidence of a serious illness. The letter from Dr. Birnbaum explained his diagnosis and described treatment for Biggs, and concluded:

> This patient has well documented systemic lupus erythematosus with continued disease activity and multi-organ involvement. Her prognosis is guarded and she requires ongoing, regular management of this serious illness. Management of patients with this degree of lupus activity requires a highly trained, well-experienced

**3.** We have also considered the following alternative characterization of Biggs' argument: The INS moved to deport Biggs on the ground of a fraudulent immigration status obtained in 1980; that action amounted to a rescission of the adjustment of her immigrant status; such a rescission, happening eight years after the adjustment, is barred by the five-year limitation of section 1256. However appealing this argument might be, our decisions in *Monet v. I.N.S.*, 791 F.2d 752, 754 (9th Cir.1986) and *Choe v. I.N.S.*, 11 F.3d 925, 929 n. 4 (9th Cir.1993) foreclose it. In both of these cases, we have held that the five-year limitation on rescission of permanent resident status does not prevent the INS from subsequently deporting an alien. While in *Choe* we recognized a limited exception to this rule, we also stated that the exception would not apply to violations that are statutory bars to adjustment of status, and a fraudulent marriage is such a bar. *See* 8 U.S.C. § 1154(c). Thus, the alternate formulation of Biggs' argument does not avail her.

rheumatologist. I believe that this patient's health would be very adversely effected if she were to return to the Philippines.

 The Birnbaum letter provided direct evidence of the adverse effect that deportation would have on Biggs' health. The IJ essentially ignored that evidence, and then refused Biggs' reasonable request to allow Dr. Birnbaum to testify telephonically on the matter. The BIA then ruled against Biggs because she failed to present evidence of medical hardship. This was an abuse of discretion. We remand to the BIA to allow Biggs to supplement the medical evidence in her record and to allow the BIA to reconsider her claim of medical hardship.

**PETITION FOR REVIEW GRANTED; REVERSED IN PART AND REMANDED.**