10-2923-ag
Adams v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Submitted: February 1, 2012     Decided: August 15, 2012)

Docket No. 10-2923-ag

NEIL NICHOLAS ADAMS,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR.,

*Respondent*.

Before:

WINTER, RAGGI, and CHIN, *Circuit Judges*.

Petitioner, who was ordered removed from the United States in 2010 because the visa he used to enter this country as a lawful permanent resident in 1997 had been obtained by fraud, here challenges the removal order as untimely, claiming that he was the beneficiary of an adjustment of status when he obtained his immigrant visa from the United States consul in his home country; and the five-year limitation on rescinding an alien's adjusted status, see 8 U.S.C. § 1256(a), applies to removal orders based on grounds that would have warranted rescission.

The petition for review is DENIED.

1

Steven Banks, Adriene L. Holder, Judith Goldiner, Jojo Annobil, Maria Navarro, Amy V. Meselson, The Legal Aid Society, Immigration Law Unit, New York, New York, *for Petitioner*.

Tony West, Assistant Attorney General, Terri J. Scadron, Assistant Director, Manuel A. Palau, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., *for Respondent*.

_____

REENA RAGGI, *Circuit Judge*:

Neil Nicholas Adams, a citizen of Jamaica, petitions for review of a 2010 decision of the Board of Immigration Appeals ("BIA") ordering his removal from the United States because he entered the country on the basis of a fraudulently procured immigrant visa and without otherwise valid entry documents. See In re Adams, No. A 046 240 254 (B.I.A. July 1, 2010), aff'g No. A 046 240 254 (Immig. Ct. Batavia, N.Y. Feb. 24, 2010). Adams contends that § 246(a) of the Immigration and Nationality Act ("INA") as amended, see 8 U.S.C. § 1256(a),[1] bars the Attorney General from ordering removal because (1) Adams was the beneficiary of an adjustment of status when, in 1997, he obtained from the United States consul in Jamaica an immigrant visa that allowed him to enter this country as a lawful permanent resident; and (2) § 1256(a) imposes a five-year limitation on rescinding the status of an alien that had been adjusted to that of a lawful permanent resident, and that limitations period prevented the Attorney General from issuing an order in 2010 for Adams's removal

---

[1] Hereafter in this opinion, we generally refer to provisions of the INA by their section designations in the United States Code.

2

on grounds that also would have warranted such rescission. The arguments are meritless. Adams's receipt of an immigrant visa did not result in an adjustment of status, and § 1256(a)'s limitations period on rescission does not apply to removal. Accordingly, Adams's petition for review is denied.

## I.     **Background**

Adams first entered the United States from his native Jamaica in 1990 on a visitor's visa, the time limits of which he overstayed. Subsequently arrested in Queens, New York, for attempting to sell cocaine to an undercover police officer, Adams represented in state court that he was "Michael Thomas" and, in that name, pleaded guilty on February 20, 1992, to attempted sale of a controlled substance. Admitted to bail, "Thomas" failed to appear for sentencing, resulting in a bench warrant being issued for his arrest. Soon thereafter, the state court received a form from Jamaica certifying that "Michael Thomas" had committed suicide, prompting it to mark the criminal case "abated by death."

Sometime after his February 20, 1992 guilty plea, Adams did in fact return to Jamaica where, on August 4, 1994, he married Charlene Rooms, a United States citizen. Adams then applied to the United States consul in Jamaica for an immigrant visa, falsely representing on his application that he had never been in the United States, had lived continuously in Jamaica, and had never been arrested or convicted. Relying on these falsehoods, the United States consul granted Adams an immigrant visa in 1997 and, that same year, he was admitted to this country as a lawful permanent resident. He lived in this country for the next eleven years, apparently without any noteworthy incident, except for his 2004 divorce from Rooms.

3

On February 28, 2008, when Adams was returning to the United States from a trip to Jamaica, he was stopped by Customs and Border Patrol ("Customs") officials, who suspected that Adams was the person identified as "Michael Thomas" in the still-outstanding 1992 New York arrest warrant. Customs did not admit Adams to the United States but, rather, paroled him into the country for the purpose of clarifying his identity. Upon confirmation that Adams and "Michael Thomas" were the same person, the Queens District Attorney's Office reinstated his criminal case. On March 19, 2008, when Adams presented himself for deferred inspection, Customs detained Adams and transferred him to state custody. On December 15, 2008, a New York State judgment of conviction was entered against Adams for attempted sale of cocaine, and he was sentenced to an indeterminate term of two to six years' imprisonment, which Adams served at a "shock incarceration" facility.

On February 19, 2009, the Department of Homeland Security ("DHS") issued Adams a Notice to Appear, charging him as removable based on his state drug conviction. See 8 U.S.C. § 1182(a)(2)(C). Upon realizing that the drug conviction was not final for purposes of the INA in light of a pending appeal, see Marino v. INS, 537 F.2d 686, 691–92 (2d Cir. 1976); accord Walcott v. Chertoff, 517 F.3d 149, 154 (2d Cir. 2008), DHS amended the Notice to Appear to delete 8 U.S.C. § 1182(a)(2)(C) as the ground for removal and to substitute § 1182(a)(6)(C)(i), which renders inadmissible "[a]ny alien who, by fraud or misrepresenting a material fact, . . . has procured . . . a visa, other documentation, or admission into the United States," and § 1182(a)(7)(A)(i)(I), which renders inadmissible "any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, . . . or other valid entry document."

4

Upon his August 13, 2009 release from state prison, Adams was transferred to DHS custody pending resolution of his immigration proceedings. Adams moved pro se for cancellation of removal, which motion was denied on February 24, 2010, following a hearing before Immigration Judge ("IJ") John B. Reid. The IJ reasoned that Adams was not entitled to cancellation of removal as a lawful permanent resident because he had obtained that status fraudulently and there were no other grounds warranting cancellation. Further, the IJ ruled that the government was not required to have rescinded Adams's status as a lawful permanent resident before ordering his removal because, upon returning to the United States from Jamaica, Adams had not been admitted into the country but only paroled into the custody of state law enforcement officials. Adams disclaimed any entitlement to asylum, withholding of removal, or relief under the Convention Against Torture. Accordingly, the IJ ordered Adams removed.

Adams appealed pro se to the BIA, contending that § 1256(a), which imposes a five-year limitation on rescission, barred his removal as untimely. Adams also submitted that he was not removable for fraudulently obtaining admission into the United States in 1997, and that he was eligible for relief under former INA § 212(c), see 8 U.S.C. § 1182(c) (1996). The BIA rejected all of Adams's claims, concluding that (1) the five-year limitation on rescission does not apply to removal and, in any event, the five-year limitation only applies to an alien whose status has been adjusted by the Attorney General, not to aliens, such as Adams, who obtained immigrant visas through consular processing; (2) the record supported the IJ's determination that Adams had obtained his lawful permanent resident status

5

fraudulently; and (3) Adams was not entitled to § 212(c) relief because he was not found removable on the basis of his drug distribution conviction.

Adams timely petitioned for review, and this court appointed him counsel.

## II.     Discussion

### A.     Standard of Review

We have jurisdiction to review Adams's petition for review insofar as it presents only a question of law, i.e., whether 8 U.S.C. § 1256(a) limits the Attorney General's authority to remove him. See 8 U.S.C. § 1252(a)(2)(D). We generally review questions of law de novo, see Boluk v. Holder, 642 F.3d 297, 301 (2d Cir. 2011), considering both the BIA and IJ decisions together, see Xiao Xing Ni v. Gonzales, 494 F.3d 260, 262 (2d Cir. 2007). Nevertheless, where, as here, the BIA's challenged decision was informed by the Attorney General's interpretation of the INA adopted in formal adjudication, our review follows the two-step framework set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See, e.g., INS v. Aguirre-Aguirre, 526 U.S. 415, 424–25 (1999); accord Feimei Li v. Renaud, 654 F.3d 376, 382 (2d Cir. 2011).

At the first step, we examine the statute itself and determine "'whether Congress has directly spoken to the precise question at issue.'" Feimei Li v. Renaud, 654 F.3d at 382 (quoting Chevron, 467 U.S. at 842). If Congress has so spoken, "'that is the end of the matter' because this Court 'must give effect to the unambiguously expressed intent of Congress.'" Id. (quoting Chevron, 467 U.S. at 842–43). If, however, the statute remains ambiguous despite our use of all relevant tools of statutory construction and legislative

6

history, see Cruz-Miguel v. Holder, 650 F.3d 189, 193 (2d Cir. 2011), we proceed to a second step of analysis to examine whether the agency's interpretation is reasonable, and not "arbitrary, capricious, or manifestly contrary to the statute," Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 844. If the agency interpretation is reasonable, then we must defer to it. See id.; accord Feimei Li v. Renaud, 654 F.3d at 382.

B.      The Alleged Error

With these principles in mind, we consider Adams's argument that his removal order must be vacated for exceeding the time limitation imposed by § 1256(a). The relevant part of that statute states as follows:

> If, at any time within five years after the status of a person has been otherwise adjusted under the provisions of section 1255 or 1259 of this title or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made. Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status.

8 U.S.C. § 1256(a) (emphasis added). Rescission, as the statute suggests, is a procedure whereby the Attorney General restores an alien to the status held before adjustment to that of a lawful permanent resident. Rescission thus falls short of removal, although an alien may become removable as a result of rescission if his restored status does not permit him lawfully to remain in the United States. See Oloteo v. INS, 643 F.2d 679, 681–82 (9th Cir. 1981);

7

Matter of S--, 9 I. & N. Dec. 548, 554 (A.G. 1962). Rescission also entails less formal proceedings than does removal. See Alhuay v. U.S. Attorney Gen., 661 F.3d 534, 546 (11th Cir. 2011); Asika v. Ashcroft, 362 F.3d 264, 270 (4th Cir. 2004); Matter of S--, 9 I. & N. Dec. at 555 n.8.

In petitioning for review, Adams alleges that the agency erred in failing to recognize that (1) § 1256(a)'s five-year limitation on rescission applies to aliens, such as Adams, who acquired lawful permanent resident status through consular processing rather than an action of the Attorney General; and (2) the five-year limitations period applies not only to the Attorney General's power of rescission, but also to his power of removal. These contentions present questions of first impression in this circuit, both of which we resolve against Adams.

C.    Section 1256(a) Does Not Apply to Consular Processing

Adams asserts that, when in § 1256(a) Congress referenced a five-year time period "after the status of a person has been otherwise adjusted," it was alluding not only to persons whose immigration statuses were adjusted by the Attorney General but also to persons whose statuses had been "adjusted" by consular processing, a means by which aliens outside the United States can apply for and receive immigrant visas that allow them to enter this country as lawful permanent residents. Adams submits that, before enactment of the INA, the phrase "adjustment of status" was used to refer to such consular processing, and that the use of the phrase "otherwise adjusted" in § 1256(a) compels a broad interpretation.[2]    We are not

_____

[2] We reject the government's argument that Adams failed to exhaust this issue before the BIA. See Lin Zhong v. U.S. Dep't of Justice, 480 F.3d 104, 122 (2d Cir. 2007) ("Usually,

8

persuaded. The text, structure, and legislative history of the INA make clear that the phrase

"after the status of a person has otherwise been adjusted" in § 1256(a) refers to a change in

the existing immigration status of an alien already in the United States. It does not refer to

the procurement of an immigrant visa by consular processing so that an alien can enter the

United States with the initial status of a lawful permanent resident. Thus, the statute's five-

year limitations period does not apply to the latter. In so ruling, we join the two other circuits

that have thus far addressed the question. See Malik v. Attorney Gen., 659 F.3d 253, 257 (3d

Cir. 2011); Oloteo v. INS, 643 F.2d at 681 [9th Cir.]; see also Monet v. INS, 791 F.3d 752,

754 (9th Cir. 1986) (acknowledging that denial of relief in Oloteo was premised on

distinction between consular processing and adjustment of status).[3] We further note that the

agency has itself so construed the statute, see Matter of Cruz de Ortiz, 25 I. & N. Dec. 601,

---

the requirement of [8 U.S.C.] § 1252(d)(1) that federal courts review only 'final orders of removal' has the effect of imposing a bar to the review of issues not raised to the BIA."). Even if Adams did not raise this argument explicitly, he implicitly made the point by contending that he should benefit from § 1256(a)'s limitations period despite having obtained an immigrant visa through consular processing. Moreover, the BIA decided the issue in denying Adams's appeal. Given Adams's pro se status in the agency proceedings and the agency's adjudication of the matter, we deem this record sufficient to demonstrate exhaustion of the issue. See Steevenez v. Gonzales, 476 F.3d 114, 118 (2d Cir. 2007) ("[W]e construe generously [alien's] pro se brief to the BIA . . . .").

[3] By unpublished summary order, this court has previously affirmed a district court opinion recognizing in dicta that § 1256(a) applies only to adjustment of status, not consular processing. See Ubiera v. Bell, 463 F. Supp. 181, 183–84 (S.D.N.Y.) (holding that court lacked subject matter jurisdiction to resolve Equal Protection challenge regarding § 1256(a)'s application to aliens who obtained their immigration status by adjustment, but not to aliens admitted with immigrant visas), aff'd without opinion, 594 F.2d 853 (2d Cir. 1978) (table). We conclude today that the discussion in Ubiera was a correct statement of law.

9

604–05 (B.I.A. 2011), and that decision would merit deference even if we were to identify any ambiguity in the statutory text.

The plain language of § 1256(a) applies broadly to all adjustments of an alien's immigration status to that of lawful permanent resident, whether effected "under the provisions of section 1255 or 1259 of this title or any other provision of law." Nevertheless, what "any . . . provision of law" must have effected is an "adjustment of status," and not some other immigration-related consequence. Because the INA does not define adjustment of status, we first consider the ordinary meaning of the words in light of the statutory context. See Shepherd v. Goord, 662 F.3d 603, 606 (2d Cir. 2011); SEC v. Dorozhko, 574 F.3d 42, 46 (2d Cir. 2009). To "adjust" means to change, usually to bring something from the current to a more satisfactory state. See Webster's Third New International Dictionary 27 (1986) (defining "adjust" as "to bring to a more satisfactory state," and "to change the position of"). "Status," as relevant to § 1256(a), refers to a person's legal relationship—lawful or not—to the state into which he may enter as a result of various conditions, including alienage. See id. at 2230 (defining "status" as "the condition (as arising out of age, sex, mental capacity, crime, alienage, or public station) of a person that determines the nature of his legal personality, his legal capacities, and the nature of the legal relations to the state or to other persons into which he may enter"). Plainly, then, adjustment of status does not refer to an alien's initial immigration status on entering the United States. Rather, it references some change in that status corresponding to a change in the alien's relationship to this country. Thus, the acquisition of an immigrant visa abroad through consular processing, which allows

10

an alien to enter the United States with the initial status of a lawful permanent resident, cannot reasonably be construed as an <u>adjustment</u> to any prior immigration status that the alien had with this country. Rather, the visa establishes an immigration status with respect to the United States where none had existed.

This construction is only reinforced by the structure of the INA, <u>see generally</u> <u>In re Bernard L. Madoff Inv. Sec. LLC</u>, 654 F.3d 229, 237 (2d Cir. 2011) (construing statute in accordance with "our usual practice of examining the [law's] overall structure and operation" (internal quotation marks omitted)), <u>cert. denied</u>, <u>Ryan v. Picard</u>, --- S. Ct. ----, 2012 WL 396489 (2012), which shows that adjustment of status and consular processing are independent procedures. Although both can result in an alien procuring lawful permanent resident status, adjustment of status and consular processing are distinguishable in at least three respects: (1) the aliens who may benefit from each procedure, (2) the government official or department authorized to act under each procedure, and (3) the government department that may revoke the status conferred under each procedure.

As noted above, adjustment of status is a procedure applicable to aliens already in the United States. <u>See</u> <u>Landin-Molina v. Holder</u>, 580 F.3d 913, 916 (9th Cir. 2009); <u>Succar v. Ashcroft</u>, 394 F.3d 8, 13 (1st Cir. 2005); <u>see generally</u> <u>Brito v. Mukasey</u>, 521 F.3d 160, 164–65 (2d Cir. 2008) (describing history of adjustment of status after INA's passage). Such persons necessarily have some relationship with or immigration status in this country, even if only one that declares their presence unlawful. The official authorized to adjust the status of certain aliens already in the United States to that of a lawful permanent resident is the

11

Attorney General.[4] See, e.g., 8 U.S.C. § 1159(b) (granting Attorney General discretion to "adjust to the status of an alien lawfully admitted for permanent residence" refugee previously granted asylum and physically present in United States); id. § 1229b(b) (granting Attorney General discretion to cancel removal and adjust status of certain otherwise inadmissible or removable aliens); id. § 1255(a) (granting Attorney General discretion to adjust status of alien admitted or paroled into United States to "that of an alien lawfully admitted for permanent residence"); id. § 1255a(a)–(b) (granting Attorney General discretion to adjust status to temporary or permanent resident for alien maintaining continuous residence in United States since January 1, 1982, or continuous physical presence since November 6, 1986); id. § 1255b (granting Attorney General discretion to adjust status to lawful permanent resident for 50 aliens annually, provided those aliens were admitted as non-immigrants); id. § 1259 (granting Attorney General discretion to make "record of lawful admission for permanent residence" for certain aliens residing in United States on or before January 1, 1972); see generally Brito v. Mukasey, 521 F.3d at 164–65 (describing Congress's creation and subsequent amendment of adjustment of status procedure). The Attorney

---

[4] As enacted in 1952, the INA authorized the Attorney General to grant adjustment of status only to aliens with valid immigration status, i.e., aliens admitted to the United States with non-immigrant visas. See S. Rep. 86-1651 (1960), reprinted in 1960 U.S.C.C.A.N. 3124, 3135–36; see generally Jain v. INS, 612 F.2d 683, 686–87 (2d Cir. 1979) (discussing difference between immigrant and non-immigrant visas). Eight years later, Congress amended the INA to allow the Attorney General to adjust the status of aliens without non-immigrant visas, including aliens paroled into this country, which is how the law remains today. See 8 U.S.C. § 1255(a); Brito v. Mukasey, 521 F.3d at 164–65; S. Rep. 86-1651, 1960 U.S.C.C.A.N. at 3136–37.

General is likewise the official empowered to revoke such a grant of adjusted status. See 8 U.S.C. § 1256(a).

By contrast, consular processing is a procedure that applies to aliens outside the United States. The Department of State is authorized to grant certain such aliens immigrant visas, which then allow the aliens to enter the United States with the status of lawful permanent residents. See 8 U.S.C. § 1201; see also Jain v. INS, 612 F.2d 683, 686 (2d Cir. 1979) (describing consular-processing procedure). The authority to revoke an immigrant visa and, by extension, the lawful permanent resident status achieved thereby, rests with the Secretary of State, who may "at any time, in his discretion revoke such visa or other documentation," after which he must communicate that decision to the Attorney General. 8 U.S.C. § 1201(i); 22 C.F.R. § 42.82(a).

At the same time that the law authorizes the Attorney General to rescind adjustments of status and the Secretary of State to revoke immigration visas, it independently authorizes the Attorney General to order an alien removed from the United States, an authority he may exercise for various reasons, including if he determines that the alien's immigrant visa was improperly obtained through fraud or if the alien was inadmissible notwithstanding his visa or obtainment of adjusted status. See 8 U.S.C. § 1182(a)(6)(C)(i) (rendering inadmissible alien who obtained visa through fraud); id. § 1227(a)(1)(A) (providing that alien who was inadmissible at time of entry is removable). Although the removal of an alien from this country may effectively negate the benefits of an adjustment of status or an immigrant visa, removal is a more serious and far-reaching action than either rescission or revocation and,

13

thus, is subject to more rigorous procedural safeguards. Compare 8 U.S.C. § 1229a (removal), with id. § 1256(a) (rescission), and id. § 1201(i) (revocation). See also Alhuay v. U.S. Attorney Gen., 661 F.3d at 546 (rejecting argument equating Attorney General's removal and rescission authorities); Knoetze v. U.S. Dep't of State, 634 F.2d 207, 212 (5th Cir. Unit B 1981) (discussing difference between Secretary of State's authority to revoke immigrant visa and Attorney General's removal power, and holding that due process protections for latter are greater than for former). The Attorney General's independent removal authority does not, in any event, alter the critical conclusion to be derived from the statutory structure: adjustment of status and consular processing are distinct procedures applicable to differently situated aliens and entrusted to different officials. Accordingly, Congress's reference in § 1256(a) to rescission of an adjustment of status to lawful permanent resident cannot reasonably be understood to reference revocation of an immigrant visa obtained through consular processing.

Indeed, the conclusion finds further support in the INA's legislative history. When the INA was enacted in 1952, Congress created the adjustment of status procedure to remedy perceived inadequacies in consular processing, which was then the only way for an alien to become a lawful permanent resident. See Brito v. Mukasey, 521 F.3d at 164–65; Jain v. INS, 612 F.2d at 686–87; Matter of S--, 9 I. & N. Dec. at 553–54. The new procedure was specifically intended to allow aliens already present in the United States to apply to the Attorney General for lawful permanent resident status without having to leave the country to secure an immigrant visa. See H.R. Rep. No. 82-1365, at 63 (1952) (observing that

14

adjustment of status procedure "obviated the need for departure and reentry in the cases of aliens temporarily in the United States," which had previously been required for all aliens seeking to become lawful permanent residents, including those who were lawfully present in United States); accord Matter of S--, 9 I. & N. Dec. at 553–54.

Thus, the legislative history of the INA confirms what the text and structure of the INA convey. Adjustment of status—both generally and in the specific context of § 1256(a)'s phrase, "after the status of a person has been otherwise adjusted"—refers to the procedure whereby the Attorney General exercises his discretion to grant lawful permanent resident status to an alien already physically present in the United States. It does not refer to the procedure whereby an alien outside the United States obtains an immigrant visa through consular processing that allows the alien to enter the United States with the status of a lawful permanent resident. Such an alien does not adjust a prior status to the more satisfactory one of a lawful permanent resident; rather, his singular status while in the United States is that of a lawful permanent resident.

Despite the fact that the INA's text, structure, and history all indicate that adjustment of status is distinct from and not inclusive of consular processing, Adams maintains that this court cannot conclude that the reference to adjustment of status in § 1256(a) does not apply to consular processing because "adjustment of status" and similar phrases lack a single, unified definition across the INA. Further, Adams points to a number of pre-INA administrative decisions where "adjustment of status" and similar phrases were used to refer to consular processing. Neither argument is convincing.

15

The INA's treatment of adjustment of status may vary the classes of aliens whose status it allows the Attorney General to adjust, compare 8 U.S.C. § 1255(a) (permitting adjustment of status for aliens "inspected and admitted or paroled into the United States"), with id. § 1255(i) (permitting adjustment of status for aliens who "entered the United States without inspection"), and the immigration statuses that can be effected by adjustment, compare id. § 1255(a) (permitting adjustment to lawful permanent resident status), with id. § 1255a(a) (permitting adjustment to temporary resident status).  But in each of the statutory examples Adams cites, adjustment of status has two unifying features: (1) the power to adjust vests in the Attorney General, and (2) the person whose immigration status is adjusted is an alien physically present in the United States.  None of the statutory sections uses the phrase adjustment of status to reference State Department authority to grant an immigrant visa to an alien outside the country.  Thus, the INA does not authorize the Attorney General—within any time period—to revoke immigrant visas granted by the State Department and rescind the legal permanent resident status those visas afforded upon entry into the United States.

Further, while some pre-INA decisions use adjustment of status to reference consular processing, they do so only with respect to aliens who had been present in the United States but who were required to return to their home countries in order to apply there to the United States consul for immigrant visas that would allow them to reenter this country as lawful permanent residents.  See, e.g., Matter of B-- & P--, 2 I. & N. Dec. 638, 647 (B.I.A. 1946) (noting that Mexican citizens "usually . . . adjust their status by crossing the border to Mexico to obtain immigrant visas"); Matter of G--, 1 I. & N. Dec. 278, 278 (B.I.A. 1942)

16

(addressing whether to extend time for alien to depart voluntarily to adjust status in lieu of deportation). Thus, even in these pre-INA examples, the phrase "adjustment of status" did not refer to an alien's use of consular processing so that his initial entry into the United States could be as a lawful permanent resident. Rather, pre-INA, adjustment of status was sometimes used to refer to the cumbersome process of departure, visa application, and reentry that was the only means by which an alien already present in this country but without permanent resident status could acquire that more desirable relationship with the United States.[5] After enactment of the INA, the phrase adjustment of status may have referred to the same object, that is, procurement of lawful permanent resident status by an alien already present in the United States. But the INA uses the term to refer to a new process for attaining that object that permits the alien to remain in the United States while seeking adjustment of status from the Attorney General.

Thus, after enactment of the INA, adjustment of status cannot reasonably be construed, as Adams urges, to apply to any process whereby an alien procures lawful permanent resident status in the United States. Rather, we conclude that adjustment of status under the INA is properly construed as "'a technical term describing a process whereby certain aliens physically present in the United States may obtain permanent resident status . . . without leaving the United States.'" Succar v. Ashcroft, 394 F.3d at 13 (quoting 3B Am.

---

[5] Adams cannot, in any event, claim that his departure from the United States fit this pre-INA pattern for securing permanent resident alien status. He fled the United States in order to avoid being sentenced and incarcerated by New York State.

17

Jur. 2d <u>Aliens & Citizens</u> § 2134) (omission in original). Such a process does not extend to consular grants of immigrant visas.

Were we to identify any ambiguity on this point, however, we would be obliged to accord <u>Chevron</u> deference to the BIA's reasonable interpretation of the statute. <u>See</u> <u>Feimei Li v. Renaud</u>, 654 F.3d at 382. That deference would afford Adams no relief. In a precedential ruling in <u>Matter of Cruz de Ortiz</u>, 25 I. & N. Dec. 601, the BIA ruled that § 1256(a)'s limitations period applies only to rescissions of lawful permanent resident status granted by the Attorney General through the adjustment of status procedure. The BIA specifically held that the limitations period does not apply in cases where an alien entered the country as a lawful permanent resident following consular processing. <u>See</u> <u>id.</u> at 605. For reasons already explained, we are satisfied that this interpretation is reasonable in light of the statutory text, structure, and legislative history. Thus, in any event, we would be bound to defer to it.

Accordingly, we conclude that when Congress authorized the Attorney General, for a period up to five years, to rescind an alien's adjustment of status, it was authorizing rescission only of a prior decision by the Attorney General to change the status of an alien already in the United States to that of a lawful permanent resident.

D.    <u>Section 1256(a)'s Five-Year Limitations Period Does Not Apply to Removal Orders</u>

Even if § 1256(a) were to be construed to impose a five-year limitations period on both the rescission of adjustments of status to lawful permanent resident and the revocation

18

of immigrant visas used to enter the United States with that status, we would still deny

Adams's petition for review because the limitations period does not, in any event, impinge

on the authority of the Attorney General to order Adams's removal. In reaching this

conclusion, we join the majority of our sister circuits to have considered the question. See

Asika v. Ashcroft, 362 F.3d at 270–71 [4th Cir.]; Stolaj v. Holder, 577 F.3d 651, 656–57 (6th

Cir. 2009); Kim v. Holder, 560 F.3d 833, 837–38 (8th Cir. 2009); Oloteo v. INS, 643 F.2d

at 682–83 [9th Cir.]; Alhuay v. U.S. Attorney Gen., 661 F.3d at 545–46 [11th Cir.].[6]

Our analysis begins with the language of the statute. The first sentence of § 1256(a)

states: "If, within five years after the status of a person has been otherwise adjusted . . . it

shall appear to the satisfaction of the Attorney General that the person was not in fact eligible

for such adjustment of status, the Attorney General shall rescind the action taken granting

an adjustment of status." 8 U.S.C. § 1256(a) (emphasis added). The language is precise

regarding what it empowers—indeed, requires—the Attorney General to do in the

circumstances identified for a period up to five years after granting an adjustment: rescind

the adjusted status, and nothing more. As that same sentence continues, in the event

---

[6] To the extent the Third Circuit has taken a different view, ultimately its jurisprudence provides no support for Adams's petition. While that court has applied § 1256(a)'s five-year limitations period to removal proceedings based on alleged fraudulent procurement of adjustment of status from the Attorney General, see Garcia v. Attorney Gen., 553 F.3d 724, 726–28 (3d Cir. 2009); Bamidele v. INS, 99 F.3d 557, 563–65 (3d Cir. 1996), it has expressly ruled that § 1256(a)'s limitations period does not apply to removal proceedings against aliens—such as Adams—who obtained lawful permanent resident status through consular processing, see Malik v. Attorney Gen., 659 F.3d at 257 (distinguishing Garcia and Bamidele on this ground).

rescission is ordered, "the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made." Id. In short, the first sentence of § 1256(a) specifies the time period within which the Attorney General is authorized to restore an alien to the status he held before adjustment. Thereafter, the alien may be subject to other legal consequences. But the sentence gives no indication that such further actions are subject to any time limitations, and it is notably silent with respect to the Attorney General's exercise of his distinct authority to remove certain aliens from the United States. See Oloteo v. INS, 643 F.3d at 681–82 (distinguishing rescission and removal authorities); Matter of S--, 9 I. & N. Dec. at 554 (same). The text's exclusive focus on rescission and silence with respect to removal "implicitly support[]" the conclusion that Congress intended the five-year limitations period to apply only to the Attorney General's exercise of his power to rescind an adjustment of status. Asika v. Ashcroft, 362 F.3d at 269; see also Garcia v. Attorney Gen., 553 F.3d 724, 729–30 (3d Cir. 2009) (Fuentes, J., dissenting). Indeed, since 1962, the BIA has interpreted the first sentence of § 1256(a) to restrict the Attorney General's rescission power—but not his removal power—in this way. See Matter of Belenzo, 17 I. & N. Dec. 374, 383–84 (A.G. 1981); Matter of S--, 9 I. & N. Dec. at 554–55.

In urging otherwise, Adams points to the second sentence of § 1256(a), which Congress added in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, Title III, § 378(a), 110 Stat. 3009. That sentence states: "Nothing in this subsection shall require the Attorney General to rescind the alien's status

20

prior to commencement of procedures to remove the alien under section 1229a of this title, and an order of removal issued by an immigration judge shall be sufficient to rescind the alien's status." 8 U.S.C. § 1256(a). The first part of this compound sentence confirms that rescission and removal are different procedures and clarifies that the former is not a necessary predicate to the latter. At the same time, the second part of the sentence acknowledges that a removal order has the practical effect of rescinding an alien's adjusted status.

The government and Adams disagree about how this second sentence informs construction of § 1256(a)'s limitations period. Focusing on that part of the sentence stating that rescission is not a necessary precondition for the commencement of removal proceedings, the government maintains that Congress was reiterating its intent to have the statutory limitations period apply only to rescission, not removal, proceedings. Several of our sister circuits agree with this reading. See Alhuay v. U.S. Attorney Gen., 661 F.3d at 545 (recognizing that first sentence of § 1256(a) "says nothing about removal proceedings," and that second sentence "draws a clear distinction between rescission and removal"); Stolaj v. Holder, 577 F.3d at 656 (holding that, by amending § 1256(a), Congress "explicitly allow[ed] the Government to initiate removal proceedings . . . without first rescinding the alien's permanent resident status"); Kim v. Holder, 560 F.3d at 837 (holding that § 1256(a)'s second sentence "makes clear that the legislature viewed rescission and removal as separate, and applied the five-year limitations period to rescission only"); see also Garcia v. Holder, 553 F.3d at 730 (Fuentes, J., dissenting) (contending that § 1256(a)'s second sentence shows that

21

"rescission proceedings, to which the five-year limitation period applies, have no bearing on the Attorney General's authority to commence a removal action"); cf. Oloteo v. INS, 643 F.2d at 683 (stating that, based on pre-1996 amendment statute, "a rescission proceeding is not a deportation proceeding, and vice versa; that Congress has chosen to limit rescission proceedings and not deportation proceedings is its prerogative").

Adams, however, stresses the latter part of the second sentence stating that removal has the effect of rescinding an alien's adjusted status. He contends that the first sentence of the statute places a five-year limitation on the Attorney General's ability to rescind an alien's lawful permanent resident status, while the second sentence confirms that removal is one way in which the Attorney General can effect such a rescission. Adams maintains that this signals Congress's intent that, in the case of an alien with lawful permanent resident status, removal, no less than rescission, is subject to a five-year limitation. He argues that any other conclusion would render the first sentence of § 1256(a) void because the Attorney General would still be able to rescind an alien's status after the five-year limitations period simply by initiating removal rather than rescission proceedings. See Bamidele v. INS, 99 F.3d 557, 564 (3d Cir. 1996) (concluding that enforcing limitations period to apply only to rescission proceedings would "in practical effect . . . constru[e] it out of existence"); see generally TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)).

22

Congress's failure to speak more plainly on how, if at all, it intended the 1996 amendment to § 1256(a) to inform construction of the statute's limitations period precludes us from dismissing Adams's urged construction as implausible. See, e.g., Garcia v. Holder, 553 F.3d at 728 (holding that 1996 amendment did not clarify that five-year limitation applied exclusively to rescission procedures rather than to all procedures resulting in rescission of adjusted status); Asika v. Ashcroft, 362 F.3d at 270 (acknowledging that argument similar to that advanced by Adams "has some force"). In the end, however, we conclude that his reading is untenable in light of the INA's text, structure, and legislative history.

First, as we have already observed, in the first sentence of § 1256(a), which establishes the five-year limitations period, Congress made no reference whatsoever to the Attorney General's power to remove an alien. The statute says only that if the Attorney General discovers an alien was not entitled to adjustment of status within five years of that adjustment, he "shall rescind" that status. 8 U.S.C. § 1256(a). More to the point, the first sentence explains that the effect of rescission is only that the alien "shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made." Id. This sentence, in other words, clarifies that rescission may render an alien removable, but it nowhere suggests that removal itself can be ordered without affording the alien the separate proceeding and procedures required for that action. On the contrary, the Attorney General could remove a person after rescission only "to the same extent" that he could remove similarly situated aliens. Id. More important, § 1256(a) nowhere indicates

23

that the distinct proceedings necessary for removal are subject to the same five-year limitations period imposed by § 1256(a) on rescission proceedings. Thus, when § 1256(a)'s first sentence states that the Attorney General "shall rescind" an alien's status, but only within five years of granting such status, we understand Congress to reference only the Attorney General's authority to commence rescission proceedings, not his separate authority to seek removal.

Second, we do not construe the 1996 amendment to § 1256(a) to signal Congress's intent to extend the statute's five-year limitations period to removal proceedings. To infer such intent simply from Congress's acknowledgment that the lesser included consequence of removal is rescission of an alien's lawful permanent resident status, as Adams urges, would be inconsistent with the structure of the INA, which specifically imposes no time limitations on removal proceedings. See Alhauy v. Holder, 661 F.3d at 546; Oloteo v. INS, 643 F.2d at 682–83; Matter of Belenzo, 17 I. & N. Dec. at 383; Matter of S--, 9 I. & N. Dec. at 553; see also Asika v. Ashcroft, 362 F.3d at 271 (noting "apparent anomaly" of "limiting to five years the Attorney General's authority to deport those aliens who received lawful permanent residence status through adjustment, but not those who gained such status upon entering the country"); see generally FDA v. Brown & Williams Tobacco Corp., 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme." (internal quotation marks omitted)). It would be curious, to say the least, for Congress to have imposed this singular restriction on the Attorney General's commencement of removal proceedings in such an oblique manner, rather than by amending

24

either the sentence of § 1256(a) expressly imposing a limitations period or those provisions of the INA directly governing removal. Indeed, the limited legislative history available regarding the 1996 amendment to § 1256(a) makes no mention of any intent to circumscribe the Attorney General's removal authority. Rather, it shows only that Congress amended § 1256(a) to "clarify that the Attorney General is not required to rescind the lawful permanent resident status of a deportable alien separate and apart from the removal proceeding." H.R. Rep. No. 104-469(I), at 245 (1996).

Third, failing to construe the 1996 amendment to § 1256(a) to extend that statute's limitations period to removal proceedings against aliens with lawful permanent resident status does not effectively nullify the five-year limitation on rescission proceedings, as Adams maintains. Although the five-year limitation on rescission proceedings "may be of little practical value to the alien" because the Attorney General can still remove him on the same grounds that would have warranted rescission of status, Matter of S--, 9 I. & N. Dec. at 555; accord Asika v. Holder, 362 F.3d at 270 n.6, interpreting the limitations period to have a narrower scope is not the same as "construing it out of existence," Bamidele v. INS, 99 F.3d at 564. Interpreting the limitations period to apply only to rescission proceedings still imposes some constraints on the Attorney General. Congress, after all, mandated certain removal procedures in the INA, see generally 8 U.S.C. § 1229a, but left it to the discretion of the Attorney General to adopt procedures for rescinding an alien's adjusted status, see

generally 8 C.F.R. §§ 246.1–246.9; Matter of Belenzo, 17 I. & N. Dec. at 383 n.3.[7]  As a result, the Attorney General need not afford the same procedural safeguards to an alien facing rescission as must be provided to an alien facing removal.  See Alhuay v. Holder, 661 F.3d at 546; Asika v. Holder, 362 F.3d at 270; Matter of S--, 9 I. & N. Dec. at 555 n.8.  But the limitations period imposed by § 1256(a) cabins the Attorney General's authority to use this informal rescission process for a period up to five years after a grant of adjustment of status.  Thereafter, he can act against an alien who was granted such an adjustment only by satisfying the more rigorous burdens of a removal proceeding.

Adams persists in arguing that this construction would render the limitations period a nullity by positing that due process would require formal procedures for both rescission and removal.  Assuming, without deciding, that due process requires minimal procedural safeguards before  adjusted status can be rescinded, but see Knoetze v. U.S. Dep't of State, 634 F.2d at 212 (concluding that revocation of visa while alien is in United States does not implicate liberty or property interest because removal might not result), it does not follow that the Constitution necessarily requires the Attorney General to adopt the same procedures for rescission that Congress mandated for removal.  Accordingly, we are not convinced by Adams's argument.  Because it is possible for rescission procedures to be less burdensome on the government than those Congress imposed for removal, this potential difference

---

[7] Among the procedures for rescission adopted by the Attorney General are written notice, see 8 C.F.R. § 246.1; a hearing before an IJ, see id. § 246.5; and the right of appeal to the BIA, see id. § 246.7.

between rescission and removal proceedings is enough to undermine Adams's assertion that limiting § 1256(a)'s limitations period to rescission proceedings renders it a nullity. See Asika v. Ashcroft, 362 F.3d at 270 & n.7; Matter of S--, 9 I. & N. Dec. at 555 n.8.

For these reasons, we conclude that § 1256(a) expresses Congress's unambiguous intent to impose a five-year limitations period only on rescission proceedings. The statutory text, context, and history do not indicate that Congress also intended to impose an identical limitation on the Attorney General's ability to initiate removal proceedings where the effect of those proceedings was to rescind an alien's lawful permanent resident status.

Even if we were to identify any statutory ambiguity with respect to the reach of § 1256(a)'s limitations period, Adams still would not be entitled to relief because we would accord deference to the BIA, which has similarly construed the relevant statutory text to apply only to rescission, not to removal. See Stolaj v. Holder, 577 F.3d at 656 (deciding in alternative that agency interpretation of § 1256(a) was reasonable); Kim v. Holder, 560 F.3d at 837–38 (same). The agency's interpretation of the five-year limitations period to reach only rescission and not removal proceedings is "based on a permissible construction of the statute," Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. at 843, for the reasons we have ourselves just set forth. Specifically, the BIA's interpretation is reasonable in that it cabins the Attorney General's ability to employ informal rescission procedures to reverse a grant of adjustment of status. As the Fourth Circuit has aptly described the matter:

> The removal of an alien—even one that is in the United States due to a mistake by the INS—is a serious and disruptive event in that individual's life; the difficulties that such an action cause for the alien are likely to be increasingly

27

severe the longer he has remained in the country. In view of these difficulties, . . . it is entirely reasonable for the Attorney General to interpret the statute to have limited his ability to utilize the less formal rescission process to the five-year period after an alien has received an adjustment, but not to have placed such a limitation on his ability to effect removal proceedings.

Asika v. Ashcroft, 362 F.3d at 271.

It is also reasonable for the BIA to avoid construing § 1256(a) in a manner that creates inconsistency between different classes of aliens subject to removal. As we have observed, the INA places no time limits on the Attorney General's power to initiate removal proceedings against any alien. Adams, however, would construe § 1256(a) to identify a single class of aliens who must be removed within a limited time frame, i.e., those with lawful permanent resident status whom the Attorney General could not remove, at least on grounds challenging procurement, once they had held that status for five years. Where neither the statutory text nor the legislative history indicates that Congress intended to create such an exception to the general rule that removal proceedings may be initiated at any time, it is reasonable for the BIA to decline itself to place a limit on the Attorney General's removal authority in a way that interjects such disparity.

Adams argues that, in any event, no judicial deference is owed to the agency's interpretation of § 1256(a) because the meaning of the statute's limitations period presents a strictly legal question not within the agency's expertise. In support, he cites Iavorski v. INS, 232 F.3d 124 (2d Cir. 2000). At issue in that case was whether Congress, in authorizing the Attorney General to promulgate regulations creating deadlines for motions to reopen removal proceedings, intended the doctrine of equitable tolling to apply to those regulations.

28

See id. at 129. In addressing that question, we observed as follows:

> Because the issue of whether a limitations period creates a jurisdictional bar to untimely claims is itself a question purely of statutory construction, it fits squarely within the initial step in the Chevron analysis. When, as here, we are called upon to engage only in an exercise of statutory interpretation, we avoid the danger of venturing into areas of special agency expertise, concerning which courts owe special deference under the Chevron doctrine.

Id. at 133. Adams claims that, in this passage, this court endorsed the view that it owes no deference to an agency's interpretation of a legislative statute of limitations. We held no such thing. Iavorski stands for the unremarkable proposition that, when Congress's intent is clear, a court interprets the statute consistent with that intent at the first step of Chevron analysis and does not need to resolve whether the agency's interpretation is reasonable. Iavorski did not conclude that, where the intended reach of a limitations provision is ambiguous, a court should not proceed to the second step of Chevron analysis and accord deference to a reasonable agency interpretation. Rather, Iavorski ruled in the alternative that, if the court had reached the second step of Chevron analysis, it would have rejected the agency's interpretation of the statute as unreasonable because it was inconsistent with Congress's intent. See id.; see also Shi Liang Lin v. U.S. Dep't of Justice, 494 F.3d 296, 304–05 (2d Cir. 2007) (en banc) (holding that deference was not owed to BIA interpretation inconsistent with Congress's clear intent). Implicit in that holding is the propriety of a court according Chevron deference to a reasonable interpretation of the reach of a statutory limitations provision where the statute itself admits ambiguity as to Congress's intent.

Finally, insofar as Adams invokes the rule of lenity to support his urged construction of § 1256(a), see INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987) (acknowledging "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"), the argument is unpersuasive. The rule of lenity is a rule of last resort, which we apply "only when none of the other canons of statutory interpretation is capable of resolving the statute's meaning and the BIA has not offered a reasonable interpretation of the statute." Ruiz-Almanzar v. Ridge, 485 F.3d 193, 198 (2d Cir. 2007). That is not this case. We have determined that the statute's text, structure, and history reveal Congress's unambiguous intent that the five-year limitations period applies (1) only to rescission of grants of adjustment of status, not to consular proceedings; and (2) only to rescission, not removal, proceedings. Alternatively, we have determined that the BIA interpretations of the statute to that same effect are reasonable.

Accordingly, we deny Adams's petition for review because there is no merit to his timeliness challenge to his order of removal.

## III.    Conclusion

To summarize, we conclude as follows:

1. Adjustment of status as used in 8 U.S.C. § 1256(a) describes the process whereby the Attorney General grants aliens physically present in the United States lawful permanent resident status. It does not reference consular processing by which the Department of State grants immigrant visas to aliens outside the United States, allowing those aliens to enter the United States as lawful permanent residents.

30

2. The five-year limitations period that § 1256(a) places on the Attorney General's authority to rescind grants of adjustment of status applies only to rescission proceedings that restore the alien to his immigration status before adjustment. The limitations period does not apply to proceedings that seek the alien's removal from the United States.

3. Because petitioner (fraudulently) secured permanent resident status through consular processing rather than adjustment of status, and because he challenges an order of removal rather than rescission, the limitations period of § 1256(a) does not apply here.

Accordingly, the petition for review is DENIED.