**DLD-333**                                                   **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1184
_____

JUAN RAMIRES FERNANDEZ FERNANDEZ,
a/k/a ANDRES MADERA ALBERTO FERNANDEZ,
a/k/a ADALBERTO FERNANDEZ FERNANDEZ,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A056 181 829)
Immigration Judge:  Honorable Rosalind K. Malloy
_____

Submitted on Respondent's Motion for Dismissal
for Lack of Jurisdiction or Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 7, 2016

Before: CHAGARES, GREENAWAY, JR., and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  July 22, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

Juan Ramires Fernandez Fernandez, a native and citizen of the Dominican Republic, petitions for review of an order of the Board of Immigration Appeals ("BIA"). We will dismiss the petition in part and deny it in part.

Fernandez attempted to enter the United States in December 2000, but was removed using expedited removal procedures under § 235(b)(1) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1225(b)(1)], because he did not have proper documents (the biographical page in the passport he was using did not appear to be genuine). The "Notice to Alien Ordered Removed" provided that Fernandez was prohibited from entering the United States for five years. A.R. 501. In November 2002, he was admitted to the United States as an immigrant spouse of a lawful permanent resident, having noted on his visa application that he had never been refused admission to the United States at a port of entry. A.R. 498.

Fernandez appeared for a naturalization interview in April 2009. On his N-400 naturalization application, he indicated that he had never "lied to any U.S. government official to gain entry or admission into the United States," see A.R. 481, and that he had never "been removed, excluded, or deported from the United States," see A.R. 482. Although he had used a different alien number and different name when he attempted to enter the United States in 2000, a fingerprint match identified him as the person who had made that attempt. Fernandez's N-400 was denied, and he was placed in removal proceedings. After amendment, the final charges asserted that he was removable

---

constitute binding precedent.

pursuant to: (1) INA § 237(a)(1)(A) [8 U.S.C. § 1227(a)(1)(A)] and INA § 212(a)(9)(A)(i) [8 U.S.C. § 1182(a)(9)(A)(i)]; i.e., that he was inadmissible because he was seeking admission within five years of his previous removal without prior consent of the Attorney General; and (2) INA § 237(a)(1)(A) [8 U.S.C. § 1227(a)(1)(A)] and INA 212(a)(6)(C)(i) [8 U.S.C. § 1182(a)(6)(C)(i)]; i.e., that he was inadmissible because he sought to procure, or had procured, a visa or other immigration benefit by fraud or by willfully misrepresenting a material fact.

Fernandez, represented by counsel, argued that the Government had the burden to show that his misrepresentations were willful. He argued that it was not clear that he understood that the expedited proceeding was really a removal, and that it was not clear that he understood English well enough, or that he understood the legal concepts of deportation, removal, and exclusion at the time of the naturalization interview. After hearing testimony from the officer who had conducted Fernandez's naturalization interview (who did not specifically remember the interview, but testified as to his practice), the IJ found sufficient evidence to sustain the charges of removability. The IJ denied Fernandez's sole application for relief (permission to reapply for admission), as he could not simultaneously receive a waiver under INA § 237(a)(1)(H) [8 U.S.C. § 1227(a)(1)(H)] (waiver for certain misrepresentations) and reapply for admission pursuant to agency law.[1] Fernandez appealed to the BIA, raising the same arguments that

---

[1] The IJ cited In re Garcia, 21 I. & N. Dec. 254 (BIA 1996); In re Roman, 19 I. & N. Dec. 855 (BIA 1988); and In re Sosa-Hernandez, 20 I. & N. Dec. 758 (BIA 1993).

3

he had raised before the IJ.  The BIA dismissed his appeal.

Fernandez filed a timely petition for review, represented by new counsel.

Fernandez's brief does not raise the arguments he pursued before the agency; rather, it is

devoted to the argument that the Government was time-barred from commencing any

removal action against him, pursuant to INA § 246(a) [8 U.S.C. § 1256(a)].[2]  He argues

in the alternative that if § 246(a) is interpreted to exclude persons such as himself who

completed consular processing rather than adjusting status in the United States, then his

equal protection rights were violated by application of that statute.  Fernandez did not

raise these issues before the agency.  He states that he did not do so because his former

attorney was ineffective.

The Government has filed a motion to dismiss, arguing that because Fernandez did

not raise his claims before the agency, we lack jurisdiction to consider his petition for

review.  The Government argues, in the alternative, that if we find we have jurisdiction to

---

[2] That section provides:

> If, at any time within five years after the status of a person has been
> otherwise adjusted under the provisions of section 1255 or 1259 of this title
> or any other provision of law to that of an alien lawfully admitted for
> permanent residence, it shall appear to the satisfaction of the Attorney
> General that the person was not in fact eligible for such adjustment of
> status, the Attorney General shall rescind the action taken granting an
> adjustment of status to such person and cancelling removal in the case of
> such person if that occurred and the person shall thereupon be subject to all
> provisions of this chapter to the same extent as if the adjustment of status
> had not been made.

consider the equal protection argument, we should summarily deny the petition for review as to that claim.

We have jurisdiction, in general, to consider a timely petition for review of a final order of removal.  See 8 U.S.C. § 1252.  The Government is correct that we only have jurisdiction to consider those claims that the petitioner has raised before the BIA.  Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012); see also 8 U.S.C. § 1252(d)(1) (court may review final order of removal only if "alien has exhausted all administrative remedies available to [him] as of right.").  And we cannot consider Fernandez's excuse that the claims were not raised due to ineffective assistance of counsel.  As we explained in an order denying his motion for a stay of removal, such a claim could be raised only in connection with a motion to reopen filed with the BIA.  See 8 C.F.R. § 1003.2; In re Lozada, 19 I. & N. Dec. 637 (BIA 1988); see also Contreras v. Att'y Gen., 665 F.3d 578, 584-85 (3d Cir. 2012) (explaining requirements for ineffectiveness claim in immigration context).

The Government implies that we might have jurisdiction to consider Fernandez's equal protection claim, as the BIA has stated that it lacks jurisdiction to consider "whether, on equal protection grounds, section 246(a) must be applied to aliens admitted to the United States in lawful permanent resident status."  See In re Cruz De Ortiz, 25 I. & N. Dec. 601, 605 (BIA 2011).  We agree that we have jurisdiction to consider an unexhausted claim when the BIA lacks jurisdiction to consider that claim.  See

8 U.S.C. § 1256(a).

Bonhometre v. Gonzales, 414 F.3d 442, 447-48 (3d Cir. 2005) (petitioner would be excused from bringing constitutional claims to BIA if the BIA lacked jurisdiction to consider them). But we summarily deny the petition to the extent Fernandez raises an equal protection claim, as we find that the claim has no merit.

In Malik v. Att'y Gen., 659 F.3d 253, 257 (3d Cir. 2011), we held that § 1256(a) applies only to those who have adjusted status within the United States, not to those such as Fernandez, who had consular processing abroad, as one who went through consular processing has never gone through the "adjustment of status" process. See also Adams v. Holder, 692 F.3d 91, 97 (2d Cir. 2012). Fernandez recognizes our holding,[3] but argues that applying § 1256(a)'s five-year limitation to those who adjusted status (we will call them "Group A"), but not to those who underwent consular processing ("Group B"), results in an equal protection violation. He argues that both groups of people are non-citizen Lawful Permanent Residents ("LPRs"), and that treating them differently serves "no legitimate government interest." Pet. Br. at 14-15. We disagree.

As Fernandez recognizes, our review is to determine whether the difference in treatment has a rational basis. See DeSousa v. Reno, 190 F.3d 175, 184 (3d Cir. 1999). Fernandez "has the burden of showing the irrationality of the classification drawn by the statute." United States v. Pollard, 326 F.3d 397, 407 (3d Cir. 2003). That burden includes the responsibility of negating "every conceivable basis that might support the

---

[3] Fernandez disagrees with our holding, but we will not consider his arguments in that regard since he did not exhaust his statutory interpretation argument before the BIA.

6

classification." Id. at 407-08 (internal quotation marks omitted). Further, we may "hypothesize the motivations of the legislature" and "consider any conceivable legislative purpose so long as it reasonably could have been entertained by the legislature." Id. at 408; see also DeSousa, 190 F.3d at 184 ("Once a facially legitimate reason for the classification is found, whether such a reason was articulated by Congress or not, we must rule the classification constitutional.").

We find several rational bases for treating Groups A and B differently. First, Congress may have determined that it wanted to hold to a higher standard those who entered the United States as LPRs from the outset (Group B). Second, Congress may have recognized that those in Group A "necessarily have some relationship with or immigration status in this country, even if only one that declares their presence unlawful." Adams v. Holder, 692 F.3d 91, 98 (2d Cir. 2012). Congress may have decided that it wanted to protect those relationships with this country. In contrast, those in Group B may have had no direct relationship with the United States before entering (fraudulently) as an LPR. Third, Congress may have treated those from Group B differently because their visas are granted, and may be revoked, by the State Department, rather than by the Attorney General. Because the two processes for receiving LPR status are different, Congress may have decided that different proceedings were warranted for removing or rescinding that status.

For the foregoing reasons, we grant the Government's motion to dismiss in part and summarily affirm in remaining part. We will dismiss Fernandez's statutory argument

7

for lack of jurisdiction, as he failed to exhaust his administrative remedies as to that claim. And we will summarily deny the petition for review to the extent Fernandez raises an equal protection claim.